# Mobile and Montgomery Railway Co. v. Blakely.

## *Action for Damages.*

1. *The greatest diligence is required of persons having charge of locomotive engines.*—Persons having control of steamboats and locomotive engines must employ more than ordinary skill and diligence to prevent disasters. They are required to be skilled in their particular departments; but infallibility is not required of them.

2. *The train need not be stopped always because persons are on the track.* The presence of persons on the railroad track does not require them to stop their trains or even check them, unless the circumstances show their approach is not observed, or the person is unable to leave the track.

3. *Persons can not convert railroad tracks into common thoroughfares.* Railroad tracks are not highways for general travel, and persons can not as matter of right convert them into common thoroughfares except at public crossings, and then only for the purpose of crossing with no undue tardiness.

4. *An officer who fails to perform a legal duty is indictable.*—An officer having control of a train of cars, who fails to perform a duty enjoined by statute may be indicted; and any person who suffers an injury which would not have resulted had the statutory duty been performed, has a right of action.

[Mobile and Montgomery Railway Co. v. Blakely.]

5. *The provisions of section 1700 of the Code do not apply to human beings.* Section 1700 of the Code contains a special provision as to cattle or stock, but has no reference to human beings. The measure of duty and liability for injury to stock found on the track is so different from what pertains to the safety of intelligent human beings, that a charge by the court applicable to one on a trial for the other, would confuse and mislead the jury.

6. *A conductor of a train may be examined as an expert.*—A person who has acted continuously for more than seven years as a "railroad conductor," can be examined as an expert, relative to the means of stopping railroad trains.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. JOHN K. HENRY.

This suit was begun by Sarah F. Blakely, as administratrix of George Blakely, in the Circuit Court of Conecuh county, against the Mobile and Montgomery Railway Company, to recover damages for the death of George Blakely, caused by a train of the corporation. The defendant " pleaded in short, by consent, the general issue and contributory negligence, with leave to give in evidence anything that might properly be shown under appropriate pleading, and the same leave was given to plaintiff, to reply any matter as if put in plaintiff's complaint or replication."

On the trial it was shown that George Blakely, the husband of the plaintiff, on the day he was killed, was in the town of Evergreen, and was intoxicated. In this condition he set out for home, and walked along the railroad track of the defendant. This was the way usually travelled by persons who went in a northerly direction from Evergreen. The track was so used with the knowledge of the defendant, its servants and agents. Before Blakely got out of the corporate limits of the town he was run over by a passenger train of the defendant going south. From the place he was killed the track was straight for more than one-fourth of a mile. When within this distance the engineer saw two women on the track near the place where Blakely was killed. They left the track. But he did not see Blakely until he was within one hundred and fifty or two hundred yards of him. He was then sitting on the track entirely motionless. As soon as the engineer saw Blakely he sounded the cattle alarm, blew down brakes, which were applied, and reversed the engine, " and did everything that could be done to stop the train, but it was impossible to arrest the train in time to prevent the disaster." The train was behind its schedule time, and was running on a down grade, at a speed variously estimated at from six to ten or from fifteen to twenty-five miles an hour.

[Mobile and Montgomery Railway Co. v. Blakely.]

There was evidence tending to show that north of the northern boundary line of the town a public road crossed the track of the defendant, and was distant from the place where the decedent was killed about three hundred yards. When crossing the public road, the engineer blew the cattle alarm furiously and down brakes, which were instantly applied. There was testimony that tended to prove the engineer, by due diligence, could have seen the deceased sooner than he did. But witnesses testified that he had served an apprenticeship in a machine shop, "and that he had been continously for eight years an engineer, running trains." He was proven to be a safe and skilful engineer.

The witness Keeler testified that he had been continuously a conductor for over seven years, and as such, it was his business to control trains and manage them, and that from his experience as a conductor, he thought he could tell nearly as well as an engineer when and by what means a train could be stopped, though he had never had any practice or training as an engineer, and had never been one.

Thereupon, defendant asked witness whether or not, in his opinion, it was possible, after the witness heard the cattle alarm, to have stopped the train, running at the speed it then was, in time to have prevented running over Blakely? The plaintiff objected to the question, and the court sustained the the objection, and the defendant excepted.

After the court delivered a written charge, it read as a part of the charge, the whole of the case of *Mobile and Ohio Railroad Company v. Williams*, 53 Ala. p. 595. And the defendant excepted severally and separately to each of the following extracts, marked A. B. C. D. E. F.:

"A. Thus the common law of this State would stand independent of statutes. Soon after railroads were constructed and operated in the State, it was found this law was not adequate to the protection of owners of stock who were suffered to let it run at large, and on February 10th, 1852, the General Assembly passed an act entitled "An act to define and regulate the liability of railroad companies."—Pamp. Acts, 1851-2, p. 45. The first section of this statute, now forms section 1406 of the Revised Code, and is clear in its terms fixing on a railroad company a positive liability for any live stock killed or injured by its cars or locomotives.

"B. The subsequent sections related to the mode of proceeding, and are incorporated in the Code as modified or changed by subsequent statutes and forms.—Sections 1407 and 1408. The act of 1852 was construed by this court soon

after its passage as authorizing the owner to recover on mere proof of ownership, value and injury by the railroad company, its cars or locomotives. Whether any degree of care or diligence would relieve the railroad company from liability was not decided, though the intimation was, it would not.—*N. & C. R. R. v. Peacock, supra.*

"C. On the sixth of February, 1858, the legislature passed an act entitled "An act to regulate and define the duties and liabilities of railroad companies in this State."—Pamp. Acts, 1857–8, p. 15. The first and second sections of this statute now form section 1399 of the Revised Code, and define the duties of engineers or persons in charge of a locomotive as to giving warning of the approach of a train at particular place, and requiring on perceiving any obstruction in the road, that he should use all the means in his power known to skilful engineers in order to stop the train. It renders the engineer, or person in charge of the train, guilty of a misdemeanor if he fails to observe its provisions, and then declares the railroad company shall be liable for all damages done to persons, stock, or other property, on account of said failure to comply with the requirements of this act, or on account of any negligence whatever on the part of the railroad company or its agents, and in no other case.—*M. & C. R. R. v. Bibb*, 37 Ala. 699, it was said that this latter statute materially modified and repealed some of the provision of the act of 1852, but in what respect there was modification or repeal, was not pointed out.

"D. The act of 1858 was amended by an act passed January the 31st, 1861, so as to strike out the words, *and in no other case,* and insert in lieu thereof, that "whenever any stock or other property is killed or injured by the locomotives or cars of any railroad in this State, and the owner of such stock or property brings suit to recover the value thereof, or the damages thereto, the burden of proof shall be on the railroad company, on trial of said suit, to show that the requirements of this first section of said act have been complied with by the said company, its agents or employees, provided that the proof hereby required shall apply only to the particular place at which the injury was done."—Pamp. Acts 1861, p. 37. This section of the act of 1861, and the third section of the act of 1858, form section 1401 of Revised Code, which declares a railroad liable for all damages done to persons, stock or other property, resulting from a failure to comply with the requirements of section 1399, *or from any negligence on the part of the company, or its agents,* and that the burden of

proof is on the company to show a compliance with the requirements of section 1399, at the place where and when the injury was done.

"E. In *N. & D. R. R. v. Comans*, 45 Ala. 437, these various legislative enactments were considered, and the result was declared that the several sections of the Code must be taken and contrued as one law. So taken and construed, the act of 1852 (Revised Code, 1406) was so far changed and modified by later statutes, that a railroad company was relieved from absolute liability for injuries to stock, and was subjected to liability only for negligence or a failure to comply with the requirements of the statutes. If the injury occurred at any one of the places where these requirements should have been observed, that when the injury was shown, the burden of proof was on the railroad company to acquit itself of negligence, or if it occurred at one of the specified places, the compliance with the precaution mentioned in the statute.

"F. We concur in this opinion, though there is much said in the argument of the court not in conformity to the views we have expressed as to the rights of an owner of animals to suffer them to go at large, and the liability of those not having inclosed against those who may injure them."

The defendant asked the court to give the following charges, which were in writing:

5. "Although the defendant may not have complied with all the requirements of the statute, still the plaintiff can not for this reason recover, if the jury believe the failure so to comply was not the cause of the. accident.

2. "An engineer in charge of a train, though he should see two or three persons standing on the track, three or four hundred yards ahead, if they were not giving any signals, and if there were no indications that would authorize a reasonable man to conclude or suspect that they could not or would not get out of the way, would not be bound to anticipate that they would remain on the track and be run over, if there was opportunity for them to get off; and he would not be bound to reverse his engine or stop his train, until there were some indications that they either could not or would not get out of danger; nor would the engineer be bound to suspect that any drunken person was hidden from his view, behind the persons he saw, unless there was something in the circumstances indicating such facts.

3. "One who should voluntarily drink until drunk, and in that condition go and remain upon a railroad track until run over by a train, would be grossly at fault—and he could

not recover for such injury, if the company's servants used proper means and ordinary care to see who was on the track, and after discovering him there, was unable, by the application of all proper means and care, to avoid the accident."

This charge was given. But the court refused to give the charges marked 5 and 2; and to each refusal the defendant separately and severally excepted.

HERBERT & BUELL, for appellant.—1. The court fell into error in supposing the liability of a railroad company is precisely the same as to persons and stock, and read to the jury the case of the *Mobile and Ohio R. R. Co. v. Williams*, 53 Ala. 595. This case construes sections 1399, 1401 and 1406. They all relate to injuries to stock, and have no reference to injuries to persons whatever.

2. No law can be found on our statute books that makes railroad companies liable for injuries to persons except section 1401, and this makes them responsible only for injuries " resulting from," as the Code has it, or " occasioned by," as the original act puts it, " failure to comply," &c., or negligence.

3. The charges marked 2 and 5 should have been given. *Tanner v. Louisville and Nashville R. R. Co.* in manuscript.

4. The court read the whole of the case of *Williams*, *supra*, and to the reading of the case as a whole the defendant excepted, because it applied to the killing of stock, and in this action the court erred is clear.—1 Ala. 423 ; 28 Ala. 83.

5. It is a general rule that giving charges which tend to mislead is not reversible because explanatory charges may be asked; yet, when a court gets so far off the track as to read in a man-case a long opinion in a stock-case, argument and all, how could we ask an explanatory charge? What kind of a charge would have cured the error? It would have savored of contempt to have asked the court to charge : " The court charges you, gentlemen, that the long opinion it has read to you has nothing to do with the case." Of course, the court thought the opinion was applicable, and we could do nothing but except.

The whole theory of the doctrine of contributory negligence is that a plaintiff can not recover for an injury which is more occasioned by, or more a result from his own negligence than from the wrong of the defendant. It never was the intention of the legislature to change this rule.—Shearm. & Redf. on Neg. §§ 481, 485, 487, and authorities cited.

[Mobile and Montgomery Railway Co. v. Blakely.]

GAMBLE & BOLLING, for appellee.—1. The court did not err in excluding the testimony of the witness, Keeler. He had never run an engine a day; had never worked an engine, and was not a mechanic, but had simply been a conductor of a train for several years. He could not be deemed, in any sense, an engineer, and therefore, as an expert, his evidence was inadmissible.—12 Ala. 648; 21 Ala. 33.

2. The principal questions in this case, however, arise on the instructions of the court to the jury. It is contended that the doctrine settled in the case of the *Mobile and Ohio R. R. Co. v. Williams*, 53 Ala. 585, do not apply to this case, except that the burden of proof is on the plaintiff, both as to the injury and the negligence of the defendant.

3. The question at bar is simply this : Is the railroad company liable for injuries to a person caused by its negligence in failing to comply with the statutory requirements contained in sections 1699 and 1700 of the Code of 1876? An examination of them shows there can be no doubt of the defendant's liability. It is not pretended that the case of *Williams*, *supra*, is not a correct construction of the statute. Why, then, is it not proper to be read to the jury? We deny, as it is asserted, that the case only applies to suits for injuries to stock.

4. If Blakely, drinking or drunk, sat down on the defendant's road, was he thereby outlawed, and did he forfeit his right to exist? But concede that Blakely was guilty of negligence, this does not defeat the right of the plaintiff to recover. "The rule is, the plaintiff may recover, although by his own negligence he exposed himself to injury, if the defendant, after becoming aware of the plaintiff's danger, failed to use ordinary care to avoid injuring him.—Shearm. & Red. on Neg. §§ 25, 36, 493, 494; 5 Sneed (Tenn.) 524; 1 Fost. & F. 361; 56 Barb. 39; 38 Ill. 482; 48 ib. 370; 47 Penn. St. 300; 26 Ind. 76; 33 ib. 542; 38 Ill. 424; 55 ib. 226; 22 Ohio St. 227. The *onus* is on the defendant to show contributory negligence.—3 Otto, 291; 15 Wall. 401.

STONE, J.—In *Satterfield v. Mobile Trade Company*, at December term, 1876, and in *Tanner v. Louisville and Nashville Railroad Company*, at the present term, we declared that persons in control of steamboats or locomotive engines must employ more than ordinary skill and diligence to prevent disasters. Our language was, "that a common carrier who employs steam as his motive power, must bring to the service that degree of diligence which very careful and prudent men.

take of their own affairs." And in the case of the *South and North Railroad Company v. Sullivan*, during the present term, we said, " if one by his own negligence, put himself in peril, yet, if the party sought to be charged, after discovering the peril, or, after being placed in a condition where, if diligent, he would have discovered the peril in time to avert the catastrophe, fails to exert proper diligence, which, if exerted, would probably prevent the disaster, this is culpable negligence, to which the primary negligence of the plaintiff is remotely contributory." And in *Tanner v. Louisville and Nashville R. R. Co., supra*, we said, " If those in charge of a train, even in the rightful exercise of their skill and diligence, find a person dangerously exposed, although such exposure was brought about by the negligence of such person, the duty of diligence resting on the officers of the train is not in the least diminished on that account. In such case, although they will stand acquitted of all blame in this first stage of the peril, yet, when the peril has become reasonably manifest, so as to create the presumption that it was comprehended, each party must again be diligent to prevent the catastrophe. If the person endangered be negligent at this crisis, and suffer injury which proper care and diligence could have averted, the law affords him no redress. On the other hand, if employing proper care and diligence to escape the danger to which his own previous negligence had contributed proximately to expose him, those in control of the train fail to apply proper skill and diligence to avoid the injury, when such skill and diligence, if promptly resorted to, might have prevented it, this is wanton or reckless negligence, for which the railroad will be held accountable. In such case the negligence of the person injured, which first placed him in jeopardy, becomes remotely contributory to the actual injury sustained, and is no bar to the suit. This rule, however, does not apply, where the manifestation of the peril and the catastrophe are so close in point of time, as to have no room for preventive effort."

The foregoing contains a summary of the duties and liabilities of railroad officers and their principals, on the particular subject we have in hand. " But this, like all other human duties, has its correlative rights and immunities. Infallibility is not exacted of those in charge of this fearful engine of good and of evil They are required to be prudent and skilled in their particular departments; but they deal with those of their fellow-beings who have attained to years of discretion, as intelligent beings having the sense of dan-

ger and instinct of self-preservation, common to humanity.
They are authorized to predicate of such, that seeing a train
approaching in dangerous proximity, they will, if of discreet
age, get off the track and place themselves out of harm's
way."—*Tanner v. L. & N. Railroad Co., supra.* And they
are not required to stop their trains, or even check them,
when they discover such persons on the track, unless facts or
circumstances tend to show the approach of the train is not
observed by the person or persons thus seen on the track, or
that they are unable to leave it. Railroad tracks are not
highways for general travel, and persons can not, as matter
of right, convert them into common thoroughfares for man
or beast, except at the public crossings; and there, only for
the purpose of crossing, with no undue tardiness.

Human beings are sentient, and have the reasoning faculty;
and this is the reason why different rules for railroads are
prescribed for the preservation of cattle, and for the safety
of human life. As to the former, in addition to sounding
the alarm whistle, the brakes must be applied, the train
checked, or stopped if need be, to prevent injury; for do-
mestic animals know not the necessity of leaving the track.
As to the latter, all that is required, as a rule, is to sound
the whistle, so as to give notice of the approaching train.
We have shown above that there are cases in which more is
required. We need not repeat them.

Certain statutory duties are required of engineers and other
persons having the control of the running of a locomotive on
a railroad.—Code of 1876, § 1699. Various duties are en-
joined by this section. First, he must blow the whistle or
ring the bell at least one-fourth of a mile before reaching
any public road crossing, or any regular depot or stopping
place on such road, and continue to blow such whistle, or
ring such bell, at intervals, until he passes such road crossing,
and until he reaches such depot or stopping place. He must
also blow the whistle or ring the bell immediately before,
and at the time of leaving such depot or stopping place.
Second, he must give a like signal before entering any curve
crossed by a public road on a cut where he can not see at
least one-fourth of a mile ahead, and approach and pass such
crossing in such cut, at such moderate speed as to prevent
accident in the event of an obstruction at the crossing. Third,
he must give a like signal on entering into the corporate
limits of any town or city, and continue to do so until he has
reached his destination, or passed through such town or city;
and the same on leaving such town or city. Fourth, he must

also, on perceiving any obstruction on the track of the road,. use all means within his power known to skilful engineers, (such as the application of his brakes, and the reversal of his engines,) in order to stop the train. And the officer having control of the running of a train, who violates any of the above provisions, may be indicted and punished therefor. Code of 1876, § 4256. The foregoing contains all the statutory provisions relating to the conduct of the engineer, or officer having control of a train, that are applicable to the case made by this record. It will be seen that there is but one of the subdivisions—the second—which, in the absence of special circumstances, requires that the speed of the train be moderated. That relates to a " curve crossed by a public road on a cut where [the engineer or officer in control] can not see at least one-fourth of a mile ahead." To come within this clause, there must be a *curve, crossed* by a *public road,* on a *cut,* so that the *crossing* and any *obstruction* upon it can not be seen a *fourth of a mile* ahead.

What are the liabilities resting on the railroad corporation, for a disregard of these rules by the engineer, or officer having control of the train? Section 1700, Code of 1876, gives the general answer to this question. It contains a special provision as to cattle or stock, which has no reference to human beings. With that question we have nothing to do in this case. It was very freely discussed in *M. & O. Railroad Co. v. Williams,* 53 Ala. 595.—See also *South & North Railroad Company v. Jones,* 56 Ala. 507. In the present case we have to deal with the question of an injury to a person—an intelligent human being. The section we are considering declares that the railroad company is liable for all damages resulting from a failure to comply with the requirements of section 1699, *supra.* To come within this section, the damages complained of and claimed must be the *result,* or consequence of the failure to perform the statutory duty. If the dereliction of duty, and the damages or injury be not, to some extent, connected as cause and effect, then the case is not brought within the statute.

In *Satterfield v. Mobile Trade Company, supra,* we announced a principle which affects the question in hand in some of its phases. The substance of what we said is, that if there be a failure to perform a duty enjoined by statute, and any one suffers injury which would not have resulted, had the statutory duty been performed, this gives a right of action to the party thus injured.

Several of the rulings of the Circuit Court are not in har-

[Gliddens v. Harrison.]

mony with what we have declared above. We deem it unnecessary to specify them, further than to remark that the measure of duty and liability for injury to stock found on the track, is so different from that which pertains to the safety of intelligent human beings, that charging the law applicable to one, in a trial for the other, is calculated to confuse and mislead the jury. If there was negligence, or a failure to comply with statutory requirements in the conduct of the train, then the corporation is liable, and only liable, for injury which resulted from such negligence or failure. An indictment would lie for such omission of duty, even though harmless in its results; but no one can maintain an action for damages, unless he has suffered injury, and such injury is the result of such negligence, or breach of duty.

We think the witness Keeler laid a sufficient predicate, and should have been allowed to testify as an expert.—1 Brick. Dig. 877, §§ 1053, 4, 5, 7, 8; *Tullis v. Kidd*, 12 Ala. 648.

Reversed and remanded.