# Frazer, Adm'r, *v.* South & North Ala. R. R. Co.

*Action by Administrator of Person killed against Railroad Company for Damages.*

1. *Contributory negligence as defense.*—This court rejects the doctrine of comparative negligence, in actions for personal injuries, and adheres to the doctrine of contributory negligence, as enunciated in its several former decisions, which are examined, explained and reconciled, as confined to the facts of the particular case.

2. *Same.*—If a person goes on the track of a railroad, in advance of an approaching train, so near that preventive effort can not avoid a collision, he is guilty of contributory negligence, which will·prevent recovery of damages by him, or his personal representative ; but, if there is no immediate danger, when he enters on the track, and he uses ordinary care to escape so soon as the danger becomes apparent, though a trespasser, and remotely guilty of negligence, his negligence does not bar an action for damages ; nor will a recovery be barred by his negligence, if the engineer, or other person, in charge of the moving train, was

guilty of wanton, reckless or intentional negligence—of a culpable omission to use the available means to prevent a collision, when a prompt resort thereto might have prevented it without danger to the passengers or freight on the train

3. *Duty of engineer or conductor on moving train to maintain lookout for obstruction.*—While it is the general duty of the engineer, or other person in charge of a moving train of cars, to maintain a vigilant lookout for obstructions, possibly including trespassers on the track, it is not an absolute and particular duty to a trespasser, so far as to make the omission to discover him negligence *per se* under all circumstances. When he sees a grown person walking on the track, three hundred yards or more in advance of the approaching train, he may reasonably presume such person is in possession of the faculties of sight and hearing, and is not required to check his train, until it becomes apparent that the trespasser is not aware of its approach, or is unable to extricate himself from his perilous position; nor is he guilty of culpable negligence, because he failed to discover the intruder on the track on emerging from a curve at the distance of three hundred yards.

APPEAL from the Circuit Court of Chilton.

Tried before the Hon. JAMES E. COBB.

This was an action by the appellant, John M. Frazer, as administrator of the estate of Richard Frazer, deceased, against the appellee, the South and North Ala. R. R. Co., for $25,000, claimed as damages for causing the death of said decedent. The pleas were : " 1. Not guilty. 2. Contributory negligence of plaintiff's intestate."

Richard Frazer, the intestate of plaintiff, was killed about noon, July 16, 1881, by a locomotive of defendant, running at the rate of from twenty to twenty-five miles an hour and drawing a train of sixteen freight cars and a caboose, northward from Montgomery to Decatur. The killing occurred near Pine Hill, Chilton county, and while deceased was walking on the track of appellee in the same direction the train was moving. In consequence of a curve in the road, a person on an engine coming from Montgomery could not see the place where the deceased was struck, until within 900 or 1000 feet of that place, but for that distance and some distance beyond, the track was straight and there was nothing to obstruct the view. The train was moving down grade, and was not required to stop at Pine Hill unless a flag was put out. At Pine Hill there was a saw mill and small store, but it was not a regular station, nor was it a city, town or village; local trains, however, stopped there to get lumber when flagged for that purpose. There was no public road crossing within half a mile either way of the place where deceased was struck.

At the time of the killing, deceased was stopping at the house of his son-in-law Grace, situated on the west side of the track about 100 yards from it. About 250 yards north of the place where deceased was killed, was the saw mill,

near to and east of the track; and from Grace's house, there was a foot path, running in a northeasterly direction, striking the track about 100 or 120 yards from the house, and Grace and others who lived at his house, worked at the mill and used this path in going to and from the mill, walking on the path until it struck the track and from that point walking on the track. A short time before the injury, the house of deceased had been burned, and at the time of the killing deceased was on his way to the mill, to see that a car load of lumber was taken off by the train for the rebuilding of his house. The lumber was to be taken northward and deceased expected to have it taken that morning. The testimony on the part of the plaintiff was, that the signal for stopping the local freight train to take on lumber was that morning given by putting out a red flag nearly opposite the mill on the east side of the track, as was customary for such purpose.

The plaintiff introduced two witnesses who saw the accident. One of them, Caton, testified, that he was walking on a road on the right of the track and parallel with it, going in the same direction the train was, when he saw deceased step from the path on to the cross-ties on the left side of the track, about 75 yards in front of witness, and continue up the left side of track on the ends of the cross-ties 'till he was struck; that at the time deceased stepped upon the track, the train was not in sight, but a few moments afterwards, witness heard a train, and, looking behind, saw it coming around the curve; that when the train came opposite witness, he saw two persons on the locomotive—one on the right hand side in the cab, with his feet to the front, and head slightly elevated and resting on his hand, in the position of a person leaning back on a bench, and the other seemed to be stooping down and doing something on the floor of the cab; that, noticing deceased was still on the track, witness stooped and looked under the train to see if he would get off, and, after passing witness, the whistle of the engine was blown twice in rapid succession, the second whistle being at the time the train struck deceased; that immediately after the first whistle deceased turned to the left, and as he did so, the second was sounded and deceased was struck, and no other signal or warning was given by those in charge of the train than these two whistles.

The other witness to the accident, introduced by plaintiff, was Mrs. Grace, a daughter of deceased, who testified that she was on the front porch of her husband's house above mentioned, and saw and heard the train coming about the same time; that she saw deceased walking on the ends of

the cross-ties, and as the train was coming very fast and gave no warning, and deceased seemed unconscious of its approach, she ran towards deceased with her thirteen months old child in her arms, to warn him off the track, but when she had gotten about 80 yards from the porch the train struck deceased; and that as soon as the whistle sounded deceased turned partially around, and, as he did so, he was knocked from the track by the engine.

The defendant introduced R. H. Pittman, the engineer in charge of the engine, who testified, that at the time of the accident, he was sitting in his proper place upon his box on the right side of the cab, looking up the track to see if a red flag had been put out at the mill as a signal for him to stop there, and, to the best of his recollection there was no flag out that day; that he did not see deceased upon the track until he saw him near the middle of it, about 25 or 50 yards in front of the train; that deceased came on the track on the left hand side, the fireman's side, and hence could be seen by the fireman sooner than by the witness; that the fireman called out there was a man on the track, and witness immediately pulled the whistle, but about the second blast the cow-catcher struck deceased.

The fireman, who was on the engine at the time of the accident, was dead at the time of the trial. Several witnesses, on both sides, were examined as to the distance from where the body of deceased was picked up, after the accident, to the point where the path intersected the track, and their estimates varied from 20 feet, as the lowest, to 100 as the highest.

The defendant introduced evidence that, in addition to being on the look-out in front, it was the duty of the engineer to see that his machine was working right; to notice the steam-cock and water-gauge, and to look back now and then to see that none of the cars had broken loose; and that it was the duty of the fireman to keep the fire up and look after the working of the pumps, and when not so engaged to be upon the lookout; and that a train, running as this train was, could not be stopped within 300 yards by using all the most modern appliances for that purpose.

The testimony showed that Grace's house was on a hill considerably higher than the railroad track, and that, in following the path from the house to the railroad, one would have to go part of the time down the hill through a ravine lower than the surface of the track, and that a person on a locomotive, running as this one was, could not see a person walking on the path from the house to the railroad, until the person was within eight or ten yards of the track, and

that, for some four or five yards before the path intersected the railroad, it was parallel with it. The evidence showed that there was a foot-path and private road on either side of the track, near where the foot-path intersected the road, by which one going from the house to the mill could walk and easily cross the road at right angles instead of walking down it. It was proven, also, that the defendant had, before the accident, published notices and put up hand-bills, forbidding and warning persons from walking on the track.

The deceased was, according to the evidence, seventy-two years of age and in fine health; his sight was remarkably good for one of his age, but he was partially deaf and had to be talked to in a little louder tone of voice than ordinary in conversation. The testimony of the plaintiff, however, tended to show that he could hear a locomotive whistle or any sharp piercing sound as well as persons of ordinary hearing.

This was substantially all the material evidence.

The plaintiff, in writing, asked each of the following two charges, which were separately refused, and each refusal was separately excepted to by the plaintiff:

"1. If the jury believe, from the evidence, that Mr. Frazer walked upon or near the track of defendant, and while so walking upon such track was run against and killed by a locomotive attached to a train of cars being run upon such track by the defendant; and if they further believe, from the evidence, that at the time of entering upon or near said track, and during the time he was walking thereon, he was not aware of the approach of such train until it was too late for him to get off; and if they further believe, from the evidence, that if the persons in charge of such locomotive, after they discovered Mr. Frazer on the track, or after they should have discovered him if they had kept the proper lookout, had used in running the engine which occasioned the killing, ordinary prudence and care in giving the reasonable and usual signals of its approach, the accident would not have occurred—then they must find a verdict for the plaintiff."

"2. When a person walking on a railroad track is knocked down and killed by an engine belonging to a railroad company, the company is responsible in damages for such killing, though the deceased was guilty of the want of ordinary care and precaution in walking on said track; provided it appears that the accident would not have occurred, if the agent of the railroad company had used in running the engine, which occasioned the killing, ordinary prudence

and care in giving reasonable and usual signals of its approach and in keeping a reasonable look out."

The court, at the request in writing of the defendant, gave each of the following eighteen (18) charges, and to the giving of each charge the plaintiff separately excepted:

"1. It is gross negligence for one to get upon a track without looking up and down it for approaching trains, and, after getting on, to walk on it without looking back; and if Richard Frazer, the deceased, got upon the track and walked down it till run over and killed by a locomotive, his so going and walking on the track was a gross act of recklessness on his part, especially if the jury find he was hard of hearing; and, upon this state of facts, the burden rests upon the plaintiff to establish, to the satisfaction of the jury, that the defendant injured the deceased intentionally, or wantonly or recklessly, and unless the injury was so committed, the verdict must be for the defendant."

"2. If the jury believe, from the evidence, that the injury and death of plaintiff's intestate was due to the failure of deceased to look back while on the track, and to the failure of the servants of defendant to keep a proper lookout ahead, and that both these causes combined caused the death of plaintiff's intestate, then it is the duty of the jury to find a verdict for the defendant."

"3. If the jury believe, from the evidence, that the engineer was looking out for a flag on the right hand side of the road, at a place shortly beyond where the deceased was injured, and just before he was struck, and that the engineer did not see the deceased on the track, or know he was there, until too late to stop, then, under the evidence in this case, the negligence of the engineer, if such there was, was not such gross, wanton, intentional wrong as will make the defendant liable, provided the jury find the deceased walked down or on the track without looking back."

"4. If the deceased was hard of hearing and walked on the defendant's track without looking back, or having looked back, still continued to walk on the track, such conduct, on his part, was gross negligence, and makes out a case of contributory negligence against him, which will defeat all rights of recovery in this action, unless it is made to appear to the satisfaction of the jury that at, and about the time of the near approach of the train, he used due diligence and care to extricate himself from the peril in which he had placed himself by his own voluntary act."

"5. Although the jury may believe that the bell should have been rung or whistle blown before it was, and that if the whistle had been blown or bell rung earlier, the deceased

might or would have gotten off the track without injury, still if the deceased would not have been walking down the track or would not have been injured, if he had used ordinary care and caution in looking back, then the deceased's negligence, if he failed to look or looked and continued on the track, is such negligence on his part as will defeat a recovery in this suit, unless the injury was inflicted wantonly or intentionally."

"6. The plaintiff was bound to use his eyes and sense of hearing as far as there was opportunity, to discover and avoid danger, and if he, by such use of his senses of sight and hearing, or either of them, might have discovered and avoided the danger, but failed to do so, and if such omission on his part contributed proximately to produce the injury complained of, and, if without such omission on his part, the injury would not have occurred, then, upon this state of facts, the jury must find for the defendant, unless the jury find there was some greater fault on the part of the defendant than want of ordinary care."

"7. As regards one who is upon the track without right, the railroad company do not owe such person the absolute duty, that the engineer and fireman should be on the lookout ahead. The engineer and fireman must look to the safety of their machine, and that it is working properly, and, when necesssary for these purposes, may lawfully, as against one upon the track without right, cease to keep a look out."

"8. After the deceased got upon the track, the law exacted diligence of him as well as of the defendant; through all the subsequent stages of the danger, in order to prevent injury, and the negligence of the railroad company, if the jury find such, in not blowing the whistle or not ringing the bell at the proper time, did not excuse the deceased for not looking, and if he did not look back, then, upon the evidence in this case plaintiff is not entitled to recover, and the jury must find for the defendant, unless the injury was inflicted maliciously, or wantonly, or intentionally."

"9. If the jury believe from the evidence, that at the time, or just immediately before deceased went upon the track, the train which injured him, was approaching him at a rate of from twenty to twenty-five miles an hour, and could have been seen by him if he had looked back, then, upon this state of facts the failure of defendant's servants to be on the lookout, is not such evidence of wanton, intentional, or reckless injury, as will authorize a recovery, and the jury must find for the defendant."

"10. If the jury believe plaintiff was hard of hearing and

got upon defendant's track without looking back, or having looked, yet continued upon the track nevertheless, this was such gross negligence as prevents a recovery, although the bell was not rung or whistle blown at the proper time, if the deceased continued walking down the track without looking back as the train approached him until he was struck, and defendant did not maliciously, or wantonly, or intentionally injure him."

"11. If the jury believe the evidence in this case, it establishes the fact, that the deceased, who was hard of hearing, went upon the defendant's track, at a place where he had no lawful right to be, and such conduct on his part defeats all right of the plaintiff to recover, unless it is made to appear to the satisfaction of the jury, that those in charge of the locomotive, wantonly, recklessly, or intentionally injured deceased ; and the facts, that defendant's servants, if on the lookout, did not perceive him in time to blow the whistle or ring the bell, or failed to be on the lookout until just before he was struck, is not evidence of such wantonness, recklessness, or intentional injury as will authorize the jury to find a verdict for the plaintiff."

"12. If the jury believe from the evidence, that both parties were equally at fault, the verdict must be for the defendant."

"13. At the place where deceased was killed, the defendant was not under obligation to use as much care and prudence in running the train, as if deceased had been in the limits of a city or town, or public crossing."

"14. Railroad tracks are not highways for general travel, and persons can not, as matter of right, convert them into common thoroughfares for persons on foot except at public crossings, and then only for the purpose of crossing with no undue tardiness."

"15. If the jury believe from the evidence, that the deceased was hard of hearing, and stepped upon defendant's track and attempted to walk down it without looking back, this was culpable negligence on his part."

"16. Under the undisputed evidence in this case, the deceased was not lawfully upon defendant's track, and the defendant owed him no duty except not to injure him wantonly, recklessly, or intentionally."

"17. When the engineer perceives a person walking ahead of the train, apparently in possession of his faculties, he need not stop or even check his speed, but may act upon the presumption that the party will get out of the way, unless it appear that such person is ignorant of his danger or unable to avoid it."

[Frazer, Adm'r, v. South & North Ala. R. R. Co.]

" 18.　If the jury believe that the deceased was hard of hearing, then the law required of him greater caution in walking upon the track than if he had full possession of his sense of hearing."

TROY, TOMPKINS & LONDON, for appellant.—The mere fact that a person is guilty of a civil trespass, does not justify the owner of the property trespassed upon, or his servants, in taking life if it can be avoided by the exercise of reasonable care. There are two views of the law upon this point. The *first* is, that, except at crossings where the public have a right of way, a man who puts his foot upon a railroad track does so at his peril; and where that is held to be the law, the plaintiff can not recover unless he shows that the injury was wilfully, wantonly, or intentionally inflicted. The *second* is, that, although the party injured is a trespasser, the company will be liable, if, after the discovery of the danger, the accident could have been avoided, or if the failure to discover the danger was the result of the carelessness of the company's employees.—1 Thompson on Negligence, 448; 6 American and English Railway Cas., 17, 20.

The *second* view has been adopted by our court. The case of *Gov't St. R. R. v. Hanlon*, 53 Ala. 70, holding the *first* view, has been expressly overruled, and the doctrine therein repudiated. This proposition argued at length, and the following cases cited and discussed : *Tanner's Ex'r v. L. & N. Railroad Co.*, 60 Ala. 621; *S. & N. Railroad Co. v. Sullivan*, 59 *Ib.* 272; *Cook, Adm'r, v. Cen. Railroad and Banking Co.*, 67 *Ib.* 533. To make one liable for a civil action, it is not necessary that the act should be criminal; it is sufficient if it be negligent.—4 Black. Com., marg. p. 192; *Morgan v. Cox*, 1 Thomp. on Neg., 238. Much greater care is required of one running a locomotive than of one driving a carriage, and of one driving a carriage, than of one on foot.—*Tanner's Ex'r v. L. & N. Railroad Co., supra ; Morgan v. Cox, supra ; Carter v. Chambers*, in MSS. Several of the charges given at the request of appellee are in direct conflict with the principles laid down in the above cases.

THOS. G. JONES, and JEFFERSON M. FALKNER, *contra*, after discussion of the facts, contended that "as regards a trespasser, at a place like this, there is no legal or moral duty to be on the *lookout* for trespassers. —See *Terre Haute & Ind. R. R. v. Graham*, 12 American & English R. R. Cases, p. 77 and notes; Cooley on Torts, p. 660; *H. T. & C. R. R. v. Richards*, 12 Am. & Eng. R. R. Cases, 70; *B. & O. R. R. v. Depew, Ib.* 64; *McAllister v. B. & N. Ry.*, 19 Am. & Eng. R.

R. Cases, 108; *Bunsin v. R. R.*, 19 Am. & Eng. R. R. Cases, 42; *L. & N. R. R. Co. v. Green's Adm'r*, 19 Am. & Eng. R. R. Cases, 95; *L. & N. R. R. v. Cooper*, 6 Am. & Eng. R. R. Cas., 5; *Carter v. Columbia & S. C. R. R.*, 15 Am. & Eng. R. R. Cas., 422. These, and numerous other cases, hold that there is no duty *to discover*—no negligence in not discovering—but that the duty arises after the discovery in fact. See *Finlayson v. R. R.*, 1 Dillon, 583; *Rudd v. Richmond & Danville R. R. Co.*, 23 Am. & Eng. R. R. Cases, 253.

The first charge requested by plaintiff was rightfully refused. 1st. It entirely ignored all the evidence of deceased's negligence—and made defendant liable if it was wanting in ordinary care, no matter how negligent deceased may have been at the last stage of the peril. Under it, if the railroad had been guilty of want of ordinary care, it would have been liable, even if deceased had intentionally and wilfully remained on the track. 2d. It put on the defendant the duty of discovering, before it did in fact discover the presence of plaintiff's intestate on the track. As shown by the authorities, there was no such duty. The second charge requested was properly refused for like reasons. It ignored the duty of the deceased at the time the peril became, or ought to have become, manifest. It put on defendant the duty of keeping a "lookout." It ignores fault of deceased, concurring with that of defendant, at the last stage of the peril. The charge was misleading. Given, it would have given the jury the impression that Frazer, in walking on the track, was *"guilty of want of ordinary care* and precaution in so walking upon the track." His conduct, in walking on the track, was *gross* negligence. It ignored the question whether he *looked* before he got on the track, or whether he looked back after getting on, instead of deliberately turning his back on an advancing train, &c. The charges given at the request of defendant were right. They covered the various phases of the case. They are upheld by the authorities cited, our own cases, and by the text books generally. If error at all, they were error without injury.

CLOPTON, J.—The charges requested by the plaintiff, base his right to a recovery, notwithstanding his intestate was walking on the track of the railroad at the time he was injured, on the mere hypothesis that he was not aware of the approach of the train until it was too late for him to leave the track, and that the accident would have been avoided if the persons in charge of the train had exercised ordinary care in giving the reasonable and usual signals of

its approach after they discovered deceased on the track, or ought to have discovered him, if they had kept the proper lookout. The duty to give the signals is not restricted to the time when the *peril* of the deceased was discovered, or ought to have been discovered; but the charges assert that the duty arises when the persons in charge of the train, by a proper lookout, ought to have discovered the deceased on the track, though he may not have been in immediate peril, and that the omission to discover and give the signals, under the circumstances disclosed by the evidence, is negligence, *per se*, sufficient to charge the defendant with liability for the injury. In order to sustain the charges it is necessary to maintain that the omission to keep a proper lookout and to discover was, not only negligence, but negligence of which the plaintiffs intestate would have a right to complain, if death had not ensued.

It being an undisputed fact that the plaintiff's intestate was walking on the track of the defendant's railroad without right, for his own convenience, the record involves the consideration of the relative and respective rights, duties, and liabilities of the defendant operating trains, and of a trespasser on the track. At the place where the deceased was killed, the defendant was entitled to the free, unobstructed, and exclusive use of the road-bed for its appropriate purposes. Persons can not, as matter of right, convert the general track to the uses of ordinary travel or passage. Though the engineer may have actually discovered the deceased when the train arrived at the point of an open view of three hundred yards or more, he would have been authorized to presume that, prompted by the instincts of self-preservation, the deceased would leave the track and place himself beyond the reach of danger in time to escape injury; and would not have been bound to stop or check the train, unless and until the circumstances made apparent that deceased was unaware of its approach, or was unable to extricate himself from the perilous position.—*M. & M. R. R. Co. v. Blakely*, 59 Ala. 471. The duty of lookout is commensurate with the probable occurrence of obstructions and other dangers, and arises as to human beings, not being passengers, when the train is approaching a public crossing, or passing through the streets of a city, town, or village. The duty also exists as to live stock, which, by their habits and experience, furnish reason of apprehension of obstruction, the owner not being regarded as a trespasser.—*A. G. S. R. R. Co. v. Jones*, 71 Ala. 487. But the company may act on the presumption that an intelligent being, of discreet years, will not assume the risk of trespassing on the right of an

unobstructed track; or if he does, that he will use proper and appropriate means to ascertain and avoid any threatening danger. While it is the general duty of a railroad company to keep a proper and vigilant lookout for obstructions and other dangers, including, it may be, trespassers, it is not an absolute and particular duty to an intruder upon the track, so far as to constitute the omission to discover him and to give the cautionary signals negligence *per se*, as to such intruder.—*McAllister v. B. & N. W. Ry. Co.*, 19 Am. & Eng. R. R. Cas. 108; *L. & N. R. R. Co. v. Greene, Ib.* 95; *T. H. & I R. R. Co. v. Graham*, 12 Am. & Eng. R. R. Cas. 77. We do not wish to be understood, from what we have said, as holding, that no duty devolves on those in charge of a moving train, when they *see* a person walking on the track. In such case a due regard for human life, and due precaution against unnecessary injury, require the usual signals of warning to be given. The rules, we have stated, are intended to apply, and apply only, when the person is not discovered.

No neglect of duty on the part of a railroad company in moving trains will excuse a person who steps or walks on the track, from using his senses of sight and hearing, if available. What care would have been required of those in charge of the train, if they were cognizant of the partial deafness of the deceased, it is unnecessary to decide, as it is not shown that it was known to them. In the absence of proof showing that the employees were informed of his deafness, he must be regarded, so far as the duty of the defendant is concerned, as in the full possession of his faculty of hearing.—*L. & N. R. R. Co. v. Cooper*, 6 Am. & Eng. R. R. Cas. 5. In the direction from which the train was approaching, the track was straight, and the view clear, for a distance of from nine hundred to a thousand feet from the place where the deceased was struck. His eye-sight was good. There was a foot-path or private way on either side of the railroad, by which a person going to the mill to which he was then going, could easily cross the track. It was the duty of the deceased to have extricated himself from the perilous position, if feasible, by the exercise of ordinary care. If the use of his faculty of sight would have given him sufficient warning to have enabled him to avoid the danger, he can not complain of any antecedent negligence of the defendant in failing to discover him, or in failing to give the usual signals. The defect of the charges, requested by the plaintiff, consists in their tendency and legal effect to withdraw from the consideration of the jury the defense of contributory negligence, as to which there could have

[Frazer, Adm'r, v. South & North Ala. R. R. Co.]

been no serious controversy on the evidence, and to rest
the legal proposition asserted on the doctrine of compara-
tive negligence, which has been discarded by our decisions.

A material qualification of the doctrine of contributory
negligence has been established, founded on the universal
duty which each member of the community owes to every
other member. The duty arises in cases like the present,
when those in charge of the moving train become aware, or
are in a condition, when they ought to become aware, of
the peril of the person, though he may be a trespasser on
the track. The nature and extent of the qualification—the
degree of care, and the character of the acts or omissions,
requisite in such cases, to acquit the defendant of legal
responsibility for the injury, constitute the main conten-
tion between the parties. The rule as announced by some
of the authorities, is expressed in terms, that the defense of
contributory negligence is overcome, if the defendant, by
the exercise of reasonable care and prudence, could have
averted the injury at the time it was committed; and by
others, that the misconduct of the defendant, which pro-
duces the injury, must be wanton, or reckless, or intentional.
The appellant insists that the rule first stated has been
approved by the decisions of this court.

This question has been considered in several cases, and
though some of the later decisions may seem to be in con-
flict, they are reconcilable on reason and principle. The
statement of the general principle, as made in *Government
Street R. R. Co. v. Hanlon*, 53 Ala. 70, was modified in *Tanner
v. L. & N. R. R. Co.*, 60 Ala. 621, as follows: "The word *and*
between the words wanton and intentional should be *or*.
Either wanton, reckless, or intentional injury done over-
comes the defense of contributory negligence." In the lat-
ter case, the deceased was riding on the track in a cut, when
the train approached. He endeavored to escape the dan-
ger at a crossing near or at the mouth of the cut, when his
horse threw him, and it became manifest that he was una-
ble to extricate himself from the peril. It is held that, in
such case, if the person endangered is employing proper
care and diligence to escape the danger, to which his pre-
vious negligence had exposed him, the failure of those in
control of the train to apply proper skill and diligence to
avoid the injury, if a prompt resort to such skill and dili-
gence might have prevented it, is wanton or reckless negli-
gence, for which the railroad will be held accountable. The
effect of the decision is not to disturb or alter the general
rule as modified and expressed, but to declare, that the want
of proper skill and diligence, under such circumstances, is

wanton or reckless negligence in the sense of the rule. The emphasized reiteration of the rule in *S. & N. Ala. R. R. Co. v. Sullivan*, 59 Ala. 272, which was subsequently decided, though reported in an earlier volume, must be considered in reference to the facts of the case, in which the general doctrine was first declared, and as applicable to those facts. The injury in the Sullivan case occurred within the corporate limits of Birmingham, where people were constantly passing, and where it was the legal duty of those having control of the train to keep a proper lookout, and to give the usual signals. It was held, that the failure, under such circumstances, to keep a proper lookout, and to give proper warning is, *per se*, negligence, and that an action will lie for an injury produced thereby, unless the person injured, after discovering his peril, fails to use proper exertions to extricate himself therefrom ; and if he so fail, this would be proximate, contributory negligence, which would deprive him of all right to recover. The question again came for consideration in *Cook v. Cen. R. R. & Bk'g Co.*, 67 Ala. 533, and arose on a charge requested by defendants, that if the plaintiff's intestate was in fault in being on the track of the railroad, and such fault contributed proximately to his death, the defendants can not be made liable, unless the conduct of their agents, after observing, or they could with due care, have observed, that he was on the track, was reckless, wanton, or intentional. The case was one, where the person injured was making exertions to escape the injury. The deceased, after discovering the condition of peril, in which he had put himself, was endeavoring to escape the danger at the time the injury was committed, which was evident to those in charge of the train for a distance of three thousand feet. The charge was held erroneous ; and was defective in ignoring this material fact in the hypothesis stated, which the evidence established. The expression of the principle, and the qualification of the rule in Hanlon's case, though general, must be construed as referable to the case in hearing and similar cases. In the subsequent case of *Cen. R. R. & Bk'g Co. v. Letcher*, 69 Ala. 106, alluding to the statute, which requires signals to be given at specified times and places, it was held, that the statute does not relieve a person in peril of injury from the duty and necessity of taking ordinary care to avoid it; and does not modify or abrogate the principle, "that a plaintiff shall not recover for unintentional injuries—for injuries not wanton—to which his own negligence directly and immediately contributes." A comparison of the several decisions shows, that they are founded on a distinction in principle between cases in which

[Frazer, Adm'r, v. South & North Ala. R. R. Co.]

the negligence of the plaintiff proximately contributed, and cases in which his placing himself in a situation subject to peril, remotely contributed to the injury.

Though it will be regarded as contributory negligence, if a person goes on the track of a railroad, or puts himself in a place so near in point of time to a collision with a passing train, as that preventive effort can not avoid it, his so doing, when danger is not immediate, does not by itself constitute contributory negligence. It is a condition which remotely contributes to the subsequent injury; but is not, in the legal sense, the proximate cause. Such negligence will not disentitle him to recover, unless he could by ordinary care have avoided the consequences of the defendant's negligence. If the person, though having placed himself in such condition, uses the proper means to discover approaching or threatening danger, and makes proper exertions to avoid it, the liability of the defendant depends on the rule applicable in cases where contributory negligence is not established, and turns on the issue, whether or not the injury could have been prevented by the exercise of reasonable care and prudence. But if a person, having voluntarily and wrongfully placed himself in such condition, thereby assuming its risks, fails to use the proper means to discover the peril, or on discovering it, fails to make exertions to extricate himself, the concurrence of such acts and omissions, makes a case of contributory negligence, which operates a constructive estoppel to a recovery, unless it is overcome by the defendant's disregard, not of a particular duty to the plaintiff, but of the general duty not to inflict wanton, or reckless, or intentional injuries on another—the duty to use one's property so as not to injure another.—*M. & E. R. R. Co. v. Thompson*, 77 Ala. 448. The rules are so declared in *Gothard v. A. G. S. R. R. Co.*, 67 Ala. 114, as applicable to the respective classes of cases herein distinguished.

We are aware that the authorities are not in harmony as to the rule we have enunciated in cases of contributory negligence. Without reviewing them, we are content to adhere to the rule as we understand it to have been affirmed in this State, and which seems to be founded on reason and principle. The other rule introduces the doctrine of comparative negligence, and tends to confuse and mislead. In 2 Wood Ry. Law, § 320, the rule is stated as requiring *wilful* negligence on the part of the railroad company, which is sustained by respectable authorities; but we are unwilling to affirm a rule less strict than that heretofore declared by our decisions.

In order not to be misunderstood, it may be observed that

when the persons in charge of the train discover the peril, or are in a position when they ought to have discovered it—a position in which the circumstances, movements, or condition of the person injured would manifest to a vigilant observer, that such person is unaware of his peril, or if aware of it, is unable to extricate himself—a culpable omission to use the means in hand to prevent an accident, when a prompt resort thereto might have prevented it, without endangering the freight or passengers being transported on the train, will be regarded as reckless or intentional negligence. On the other hand, the rule " does not apply, where the manifestation of the peril and the catastrophe are so close in point of time, as to leave no room for preventive effort." If the deceased stepped and walked on the railroad track, without using the precaution to see if a train is approaching, when it is so near that a collision can not be avoided, his want of due care disentitles the plaintiff to recover.—*Tully v. Fitchburg Railroad Co.*, 134 Mass. 499. An instruction asserting the legal proposition in the terms of the rule, based on a sufficient hypothesis, may be properly given. If the plaintiff apprehends that the generality of the terms may mislead, an explanatory charge may be asked.

On the foregoing principles, charges one, eleven, and sixteen, given at the request of defendant, are erroneous, in that they omit from the hypothetic facts, the negligence of the deceased in failing to use means to discover his peril, and to make exertions to avoid its consequences, which is essential to relieve the defendant from liability for other than wanton, or reckless, or intentional misconduct, unless the discovery of the peril, and the collision were so nearly simultaneous, that an attempt to prevent it would have been unavailing.

Reversed and remanded.

