[Louisville and Nashville R. R. Co. v. Black.]

# Louisville & Nashville Railroad Co. v. Black.

*Action for Damages against Railroad Company, by Administrator of Person Killed.*

1. *Trespassers on railroad track.*—As against an adult person trespassing on a railroad track, whether crossing it, standing or walking on it, the engineer in charge of an approaching train is under no obligation to keep a special look-out, nor required to stop or check the train, but may act on the presumption that he will get out of the way, until it becomes apparent that he is deaf, or from some other cause can not extricate himself from the peril.

2. *Same.*—The liability of the railroad company, for injuries to such trespasser, does not commence when he is first seen on the track, but when it is first discovered that he is ignorant of the approaching danger, or can not extricate himself from it; and if this is not discovered until it is too late to prevent the injury by the use of all proper appliances, the railroad company is not liable.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by F. M. Black, as the administrator of the estate of John R. Daniel, deceased, to recover damages for the alleged negligent killing of his intestate by a locomotive engine belonging to the defendant. The accident occurred on the 18th April, 1887, near Bolling in said county; and the action was commenced on the 6th July, 1887. The defendant pleaded not guilty, and contributory negligence; and issue was joined on these pleas. It appeared on the trial, as the bill of exceptions shows, that the deceased was deaf and dumb, and was walking on the railroad track, when he was overtaken and struck by the engine approaching from behind, being instantly killed, and his body thrown about thirty feet; that the track was there straight for nearly a mile, and the engineer had seen him for a half mile back. The engineer thus testified: "There were three persons on the engine—the flag-man, the fireman, and myself. When we approached within about two hundred yards of the deceased, Miles, the flag-man, commenced ringing the bell, and continued to do so; and when within about one hundred yards of him, I commenced sounding the whistle. I gave probably thirty or forty short blows, and noticing that he did not get off, nor look around, I thought something must

[Louisville and Nashville R. R. Co. v. Black.]

be the matter, and at once shut off the steam, reversed the engine, and applied steam again: and in the meantime the fireman applied the hand-brakes to the tender, while I continued to blow the whistle; but the deceased did not get off the track, and the engine struck and knocked him off, running about seventy-five yards afterwards before it stopped." There was other evidence, as to the speed of the engine, the distance within which it could be stopped, &c.

The defendant excepted to several charges given by the court at the instance of the plaintiff, and among them the following: (6.) "The court instructs the jury that, if the engineer in charge discovered the peril of the deceased, and that the deceased was unaware of his peril, and that he failed, after such discovery, to use the means in hand of preventing the injury, when a prompt resort thereto might have prevented it, such failure will be regarded as reckless or intentional negligence, for which the defendant would be liable in this action." (10.) "The court instructs the jury that if, after the deceased was seen, and his peril discovered, or the engine was in a position that the agents or servants of the defendant then in charge of it ought to have discovered his peril, they did not use proper skill and necessary efforts to avoid the injury, then they were guilty of wanton, or reckless, or intentional negligence, and the defendant would be liable therefor."

The defendant also excepted to the refusal of several charges asked in writing, and among them the following: (2.) "If the jury believe from the evidence that the injury and death of plaintiff's intestate was due to his failure to look back while on the track, and to the failure of defendant's servants to keep a proper look-out ahead, and that both of these causes combined caused his death; then it is their duty to find a verdict for defendant."

(4.) "Although the jury may believe that, if the engineer had commenced to stop his engine sooner than he did, the accident would not have happened; yet, if they find from the evidence that the fact that the deceased was deaf, or hard of hearing, was unknown to the engineer and other persons on the engine, the engineer had a right to presume that the deceased would get off the track in time to prevent injury to himself; and if the jury believe that the deceased would not have been walking on the track, or would not have been injured, if he had used ordinary care and caution in looking back, then his negligence, if he continued on the track and

failed to look back, is such negligence as will defeat a recovery, unless the injury was inflicted wantonly or intentionally."

(6.) "If the jury believe the evidence in this case, it establishes the fact that the deceased, who was either deaf, or very hard of hearing, went on the defendant's track at a place where he had no lawful right to be, and such conduct on his part defeats all right of plaintiff to recover, unless it is made to appear to the satisfaction of the jury that those in charge of the locomotive wantonly, recklessly, or intentionally injured the deceased; and if the jury believe from the evidence that the engineer acted on the presumption that the deceased would get off the track in time to prevent injury to himself, until it was too late to stop the engine in time to prevent the the injury, then this is not evidence of such wantonness, recklessness, or intentional injury, as will authorize the jury to find a verdict for the plaintiff."

(12.) "Under the undisputed evidence in this case, the deceased was not lawfully on the defendant's track, and the defendant owed him no duty except not to injure him wantonly, recklessly, or intentionally."

(13.) "If the the jury believe from the evidence that while plaintiff's intestate was upon defendant's track, the train which injured him was approaching him at the rate of twenty-five or thirty miles an hour, and could have been seen by him if he had looked back; then, upon this state of facts, the failure of defendant's servants to act on the presumption that he was deaf, or hard of hearing, and to stop the train on seeing him on the track, is not such evidence of wanton, intentional or reckless injury, as will authorize a recovery by plaintiff."

(23.) "If the jury believe from the evidence that the fact that the deceased would not get off the track was known by the engineer too late to enable him to stop the engine, then they must find for the defendant."

(24.) "Unless the jury believe from the evidence that, after the discovery that the deceased would not leave the track, the conduct of the engineer was such as to show a reckless disregard for the life of the deceased, they must find for the defendant."

(25.) "If the jury believe from the evidence that the engineer, as soon as he discovered the peril the deceased was in, used all the means known to skillful engineers to stop the engine and prevent the accident, they must find for the defendant."

(26.) "If the jury believe from the evidence that the engineer, as soon as he discovered that the deceased would not leave the track in time to escape injury, shut off steam, reversed his engine, applied steam again, and had the brakes applied; and if they further find that this was all he could do to stop the engine,—then they must find for the defendant."

(27.) "If the jury believe from the evidence that the engineer, after discovering that the deceased would not leave the track in time to escape the danger, immediately did all in his power to stop the engine, then they must find for the defendant."

The charges given, and the refusal of the several charges asked, are assigned as error.

JONES & FALKNER, for appellant.

RICHARDSON & STEINER, contra.

STONE, C. J.—The principles which must control this case are settled by our former rulings. Plaintiff's intestate was walking on defendant's track, at a place which was neither a public crossing, nor in a city, town or village. He was a trespasser, and the defendant owed no duty to look out for trespassers.—*M. & C. R. R. Co. v. Womack*, 84 Ala. 149; *Carrington v. L. & N. R. R. Co.*, 6 So. Rep. 910; 88 Ala. 472. A person on a railroad track, either crossing it, standing on it, or walking on it, must employ eyes and ears, that he may be informed whether there is an approaching train; and if he fail to do so, he is guilty of negligence.—*S. & N. R. R. Co. v. Thompson*, 62 Ala. 494; *Gothard v. Ala. Gr. So. R. R. Co.*, 67 Ala. 114; *Frazer v. S. & N. R. R. Co.*, 81 Ala. 185; *L. & N. R. R. Co. v. Crawford, ante*. Employees running on an engine or train on a railroad track, when they discover a person on the track, who, from appearance, is an adult, or of discreet years, are justified in supposing such person will see or hear the approaching engine or train, and get off the track; and hence, in such conditions, there is no duty to stop or check the train, in the absence of other attendant circumstances. *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *Frazer v. S. & N. R. R. Co.*, 81 Ala. 185. The railroad employees may act on this presumption, until circumstances—actual circumstances, brought to their knowledge—make it apparent that the trespasser is not aware of the approach of the train, or

is unable to extricate himself from the peril.—*M. & M. R. R. Co. v. Blakely*, 59 Ala. 471; *Frazer v. S. & N. R. R. Co.*, 81 Ala. 185. And this rule applies to cases in which the trespasser is deaf, with this qualification: whenever those running the train become conscious that the trespasser is not aware of the approaching danger, or, from any cause, is unable to leave the track, then it is the duty of the employees to avert the catastrophe, if possible. They must employ the appliances for checking or stopping the train, unless it is shown such appliances would be unavailing. *Bentley v. Ga. Pac. Railway Co.*, 86 Ala. 484; *Blanton v. Ga. Pac. Railway Co.*, 84 Ala. 154; *C. & W. Railway Co. v. Wood*, 86 Ala. 164. But the impossible need not be attempted.—*Ala. Gr. So. R. R. Co. v. McAlpine*, 75 Ala. 113; *M. & C. R. R. Co. v. Hembree*, 85 Ala. 481.

Applying the foregoing principles to this case: The defendant owed no duty to plaintiff's intestate, to keep a lookout for him, he being a trespasser on its track, and having the size and appearance of an adult. When he was discovered, defendant still owed him no duty to stop or check its train, until it is shown that those running it became conscious that he was not aware of his danger. When the employees discovered that he was unconscious of their approach, it then became their duty to save him, if, by the appliances at their command, they could do so. This duty, however, did not arise until, by intestate's conduct, he showed that, from deafness, or some other cause, he was unconscious that the train was approaching. If, when the employees discovered that intestate was ignorant of his danger, it was then too late to save him, the verdict of the jury should be for the defendant; for up to that point it had done no wrong. If, however, the railroad employees, after making such discovery, could, by the appliances at their command, have stopped the train and saved his life, and if they did not in good faith attempt to do so, their failure to act, when it would probably have been successful, would be negligence so reckless and wanton in degree, as to become the legal equivalent of intentional wrong, and would entitle plaintiff to a verdict, notwithstanding his intestate's prior negligence. *L. & N. R. R. Co. v. Crawford, ante.* Such case would present the secondary stage of peril, mentioned in *Tanner's Case*, 60 Ala. 621.

We have now stated the legal principles which bear on the question of defendant's liability. It dates, not from the

[Patterson v. South and North Ala. R. R. Co.]

time intestate was discovered on the track, but from the time the railroad's employees learned he was ignorant of the approaching engine. If, after decedent's ignorance of his peril was brought to their knowledge—actual knowledge, for they owed the intestate no duty to find it out—they failed to apply all the instrumentalities at their command to stop the train and save him, then, and only in that event, is plaintiff entitled to a verdict. His deafness does not become a factor in the inquiry, until defendant's employees become aware of it.—*Frazer's Case*, 81 Ala. 185. If that state of wanton negligence on the part of the defendant's employees has been shown to the satisfaction of the jury, plaintiff is entitled to a verdict. If it has not been so shown, the finding should be for the defendant.

Many charges of the court, given and refused, assert principles not reconcilable with what we have said. We do not propose to criticise them all. Of the charges given, the sixth is liable to two interpretations, one of which is unsound. The phrase, "and that the deceased was unaware of his peril," should be so changed as to read, "and that he discovered the deceased was unaware of his peril." So changed, it could not mislead, and would be an accurate expression of the principle. Charge ten, given at the instance of plaintiff, should have been refused.

Of the charges asked by defendant and refused, the following assert correct legal principles, and should have been given, namely: 2, 4, 6, 12, 13, 23, 24, 25, 26, and 27.

Reversed and remanded.