# Nave *v.* Alabama Great Southern Railroad Co.

*Action for Damages against Employer, by Administrator of Deceased Employee.*

1. *Evidence; opinion of witness.*—In an action against a railroad company by the administrator of the estate of a deceased person to recover damages for the negligent killing of plaintiff's intestate, the opinion of a witness, who was not present at the time of the injury, but some time afterwards came to the place where the body was lying and where the injury occurred, as to whether "said wounds could have been made if the deceased had been lying down," is not competent evidence, it not being shown that the witness is an expert in regard to the matter upon which his opinion is called for.

2. *Same.*—In an action to recover damages for the negligent killing of plaintiff's intestate, who was a youth over fifteen years of age,

[Nave v. Alabama Great Southern R. R. Co.]

a question as to "what would the services of the deceased have been worth when he reached twenty-one years of age, if he had lived," was properly excluded, as calling for an opinion based upon contingencies too remote and uncertain to furnish a basis for the admeasurement of damages.

3. *Sitting or standing on railroad track.*—The plaintiff is not entitled to recover in an action for the negligent killing of his intestate. where the deceased, who was a youth over fourteen years of age, while in the employ of the railroad company, sat or stood upon the track, in a position to see an approaching train for more than half a mile, until he was run over by the train and killed, the defendant's employees in charge of the train neither actually knowing, nor being guilty of reckless or wanton negligence in n· t knowing, the perilous position of deceased in time to avert the danger by the use of any possible diligence.

4. *Same; duty of persons in charge of train to maintain lookout.* Where a flagman was charged with the duty of giving signals to north-bound trains, for the protection of workmen who were engaged in laying rails north of where he was stationed, but had no authority to signal south-bound trains, there was no duty resting upon the employes in charge of a south-bound to keep a lookout at this place, other than the general duty resting at all times upon those operating a train to keep a lookout to avoid injuries and accidents.

APPEAL from the Circuit Court of DeKalb.

Tried before the Hon. JOHN B. TALLY.

This is an action by Jacob A. Nave, as the administrator of the estate of Benjamin F. Nave, deceased, against the Alabama Great Southern Railroad Company, a domestic corporation. The case is sufficiently stated in the opinion. Judgment for defendant, and plaintiff appeals.

AIKEN, DORTCH & MARTIN, for appellant.

L. A. DOBBS, *contra.*

COLEMAN, J.—The present suit is by the plaintiff in his representative character as the administrator of the estate of Benj. F. Nave, deceased, and instituted to recover damages for the negligent killing of plaintiff's intestate. Issue was joined upon the first and third pleas of the defendant. The first presented the general issue, and the third set up as a defense contributory negligence, and denied that the death was "the result of any wanton, reckless or intentional act done by the defendant." There are four assignments of error, and the questions raised by them will be considered in the order presented.

On his direct examination by plaintiff, the witness Lowry described the wounds found on the head of the deceased. On his cross-examination he was asked, "if the wounds he had described to the jury could have been made if the de-

ceased had been lying down between the ties?" Against the objection of the plaintiff, the witness was permitted to testify, "that said wounds could have been made if the deceased had been lying down." The evidence showed that the witness was not present at the time of the injury, but came to the place where the body was lying, and where the injury occurred, some time afterwards. The general rule is, that a witness can testify only to facts. An exception, as well established as the general rule, lies in favor of what is known as expert testimony. The record contains no evidence tending to establish that the witness was an expert in regard to the matter upon which he was permitted to give his opinion. The jury were just as competent as the witness to form an opinion, from a description of the wound, as to the position of the deceased when injured, as the witness himself. It is the province and duty of the jury to draw inferences and conclusions from facts, and the conclusion or opinion of a witness, not within the exception to the general rule, is inadmissible to influence them, in forming their conclusions. The admission of this evidence was erroneous, and must work a reversal of the case, unless it is affirmatively apparent that its admission was error without injury.

The evidence tended to show that the deceased was fifteen years old when he was killed. After introducing evidence tending to show the value of the services of the deceased, a witness was asked by plaintiff's counsel, "What would the services of deceased have been worth when he reached twenty-one years of age, if he had lived?" The court sustained an objection to this question, and this is assigned as error. The ruling of the court was clearly correct. The answer to such a question would be purely speculative opinion, based upon contingencies too remote and uncertain to furnish a basis for the admeasurement of damages.

The court gave the general affirmative charge for the defendant, and this is assigned as error. This question involves an examination of the tendency of the testimony introduced in evidence, and which is claimed to support plaintiff's contention. The facts proven tend to show that deceased was a youth, over fifteen years of age; that he was in the employ of the defendant corporation as a flagman; that he was stationed on the road a mile or more south of where a "steel gang" was at work laying steel rails, and it was his duty to give the danger signals to northbound trains, by displaying a red flag, which was the signal to stop the train; that the engine which inflicted the injury was running

from north to south, at the speed of thirty-five miles per hour; that the track was straight for more than a half mile before reaching the spot where deceased was struck, and that it gave no warning of its approach; that it was 10 or 11 o'clock A. M., and the view unobstructed; that between 8 and 9 A. M. deceased was seen standing on the track, and at that time the flag-staff with the red flag was standing between the rails on the track; that shortly after this time deceased was seen sitting down on the ends of the cross-ties; that the wounds which caused his death were inflicted on the head, and that if deceased had been sitting upon the ends of the cross-ties the steam-chest would have struck him. These are the tendencies of the evidence upon which plaintiff relies for a recovery. If true, would they sustain plaintiff's action? They show that deceased was in a position to command a full view of the train for more than a half mile; that he was of that age when the law holds him to the exercise of reasonable discretion and prudence for his own preservation, and if he either stood or sat upon the track, under such circumstances, until he was run over by the train and killed, he was guilty of such gross contributory negligence as to defeat plaintiff in his suit, unless the defendant was guilty of intentional injury, or such carelessness as to amount to wantonness or an intention to inflict injury. There is no evidence in the record from which it can be inferred that the employees in charge of the train knew of deceased's perilous position in time to avoid the injury by any possible diligence, unless such knowledge be inferred from the fact that it was daylight, the road straight, the view unobstructed, and from the duty to keep a look-out for obstructions.

The duty of deceased was limited to that of giving signals to north-bound trains, and intended for the protection of those who, north of where was stationed, were engaged in laying rails on the track. He had no authority to signal south-bound trains, for such trains necessarily had passed the "steel gang" before reaching the place where he was stationed. Under the facts proven, there was no duty resting upon the employees in charge of the train to keep a look-out at this place, other than the general duty resting at all times upon those operating a train to keep a look-out to avoid injuries and accidents.

The rule declared in *Glass v. Memphis & Charleston Railroad Co.*, 94 Ala. 581, is as follows: "One who is injured in consequence of being negligently on a railroad track can not recover, unless the railroad employees are guilty of such

gross negligence or recklessness as amount to wantonness or an intention to inflict the injury; and that this wantonness and intention to do wrong can never be imputed to them, unless they actually know, (not merely ought to know), the perilous position of the person on the track, and with such knowledge, fail to resort to every reasonable effort to avert disastrous consequences. And this doctrine applies as well to densely populated neighborhoods in the country, and to the streets of a town or city, as to the solitude of the plains or forest."

The rule is further stated in *Geo. Pac. Railway Co. v. Lee*, 92 Ala. 271, as follows: "The failure to keep a look-out, which it was the duty of defendant's employees to maintain, and which would sooner disclose the peril of the driver and plaintiff's wagon and team, even conceding that such would have been the case, was at the most mere negligence, inattention, inadvertence"; . . . that "the purpose to accomplish a given result can not be imputed to mental conditions the very essence of which is the absence of all thought on the particular subject."

The proposition declared in the citation from the case of *Glass v. Memphis & Charleston Railroad Co.*, that "wantonness and intention to do wrong can never be imputed to them unless they actually know, not merely ought to know," must be taken in connection with, and as limited, in the case of *Ga. Pac. Railway Co. v. Lee*, 92 Ala. 271, to the effect, "That to run a train at a high rate of speed, and without signals of approach, at a point where the trainmen have reason to believe there are persons in exposed positions on the track, as over an unguarded crossing in a populous district or a city, or where the public are wont to pass on the track with such frequency and in such numbers, facts known to those in charge of the train, as that they will be held to a knowledge of the probable consequences of maintaining great speed without warning, so as to impute to them reckless indifference in respect thereto, as would render their employer liable for injuries resulting therefrom, notwithstanding there was negligence on the part of those injured, and no fault on the part of the servants after seeing the danger. The doctrine is not based on the idea that they ought to have sooner observed the danger, but on the ground that they knew of its existence, of the presence of people in positions of peril as a matter of fact, without seeing them at all in the particular instance." The rule as stated in no wise was intended to modify that declared in *Savannah & Western Railroad Co. v. Meadows*, 95 Ala. 137, as to the duty of train-men "when

[Bolling & Son v. Speller.]

running through a city, town or village thickly populated, and the demands of trade and public intercourse and convenience necessitate the frequent crossing of a track, and it is likely there are persons on the track at the time and place, to keep a look-out. The duty arises when the circumstances and conditions call for its exercise, and which are known to those operating the train." See also, *C. & W. Railway Co. v. Wood*, 86 Ala. 164, and authorities cited.

Apply these principles to the facts of the case as stated in behalf of the plaintiff. The evidence shows that plaintiff's intestate, whether standing or sitting on the railroad track, was guilty of gross contributory negligence. The evidence does not show that defendant's employees in charge of the train actually knew, or were guilty of reckless or wanton negligence in not knowing, the perilous position of deceased in time to avert the danger by the use of any possible diligence. Failing to see him under the facts proven, at most, would be nothing more than simple negligence, and this will not authorize a recovery when the plaintiff himself was guilty of contributory negligence. It follows from these conclusions that the defendant would have been entitled to the general charge, whether the proof showed that deceased was standing or sitting on the track.

The error, therefore, in admitting testimony tending to show that the wounds could have been inflicted had deceased been lying down, must be held to be error ithout injury. We think it unnecessary to consider the positive proof on the part of the defendant to the effect that the flag was not on the track at the time the train approached the spot, and that deceased was lying down asleep, with his body extending down in a ditch, and his head so placed between the ties that he could not be seen until the train was within a few feet of him.

Affirmed.