# Birmingham Railway & Electric Co. v. Smith.

*Action for Negligent Injury by Street Railway Co*

1. *Charge on effect of evidence; when properly refused.*—Where the evidence of the plaintiff, on an issue of willful and intentional injury by the defendant, tends to show that the injury complained .of was intentional and willful, and the evidence of the defendant that it was from mere carelessness, it is not error for the court to refuse to give charges on the effect of the evidence asked by the defendant, and to submit the evidence to the jury..

APPEAL from the City Court of Birmingham. Tried before the HON. H. A. SHARPE.

The defendant in the court below asked several charges all on the effect of the evidence. The facts are set out in the opinion.

WALKER, PORTER & WALKER, for appellant.—The general charge should have been given to the second count charging willfulness.—*Birmingham Railway and Electric Co. v. Bowers*, 110 Ala. 328.

No brief for the appellee came to the reporter.

TYSON, J.—There were two counts in the complaint; one charging simple negligence, and the other that the servant of the defendant in charge of the car willfully and intentionally ran it against the plaintiff's buggy and horse, which resulted in the injury complained of. The judge trying the case, at the request of the defendant instructed the jury that plaintiff was not entitled to recover upon the count of the complaint charging simple negligence, but submitted to the jury for their determination from the evidence, as to whether the defendant's servant was guilty of willful and intentional misconduct.

It was contended by defendant's counsel in the court below, and that contention is renewed here, that the evidence fails to establish such a state of facts as that entitled the plaintiff to have the question of willful or intentional injury submitted to the consideration of the jury; that upon the most favorable construction of the entire evidence, it proved no more than simple negligence on the part of defendant's motorman which was overcome by the contributory negligence of the plaintiff himself. The soundness of this contention involves the necessity of stating the tendency of the testimony introduced by each of the parties litigant, and the natural and logical inferences to be deduced therefrom.

The evidence introduced by the plaintiff tended to prove that while driving along 20th street in the city of Birmingham, between avenues B and C, in a top buggy enclosed by curtains to protect its occupants from the rain, about half way between the east track of defendant —there being two tracks of defendant over which it operated its cars between these avenues—and the sidewalk, at a point about one hundred and seventy feet from avenue B, he turned his horse and buggy towards the west side of 20th street and drove diagonally across the tracks of defendant. The plaintiff and the witness who was in the buggy with him testified that as they approached the east track they looked back and saw the car standing at the south side of avenue B on the west track; that they without looking up or down the tracks

23

again and without stopping and listening drove across the east track and were on the west track crossing it when the car coming from the north and from the direction behind them, ran into the buggy causing the injuries complained of. The evidence further tended to show that the horse was in a walk as he crossed the street and tracks and when the car struck the buggy plaintiff and the witness who was in the buggy, were thrown out of the buggy and while in the act of falling the plaintiff testified he heard the motorman in charge of the car say, "Look out, this is the second time you have driven before me this morning, and it will teach you to keep out of the way." The other person thrown from the buggy testified that the motorman on the car said, "Look out, this is the second time you have driven across in front of me this morning." That no signal of any kind was given of the approach of the car. Another witness for plaintiff located the moving car at about one hundred or one hundred and twenty-five feet from the plaintiff when he started across the tracks and that the car was running "pretty fast;" its speed was unchecked until its collision with the buggy; and the motorman was looking straight ahead in front of the car. The evidence on the part of the defendant tended to prove that the plaintiff was driving along the street within a few feet of the front end of the car from avenue B to point of collision. That the plaintiff suddenly without looking or stopping turned his horse and buggy diagonally across the track but immediately in front of the moving car, within a few feet of it, which was running at a rate of speed of five or six miles per hour. The motorman testified that when the buggy started to cross the track he did all that he could to stop the car and prevent the collision, but on account of the close proximity of the two, it was impossible to do so; that the car stopped almost immediately after striking the buggy. In addition to the testimony of the motorman and a passenger on the car, the defendant introduced a correct map of the street showing the tracks of the car line on this street between avenues B and C and the distance from avenue B to the point of collision to be about two hundred and fifty feet and the tracks between them to be straight, with nothing to obstruct the view.

[Birmingham Railway & Electric Co. v. Smith.]

Unquestionably if the testimony of the witnesses examined by the defendant was true the injuries complained of were the result of the carelessness of the plaintiff; and the motorman, if guilty of any negligence, could be chargeable only with simple negligence for failing to give the proper signal of the approach of the car, upon perceiving the horse being turned for the purpose of crossing the track upon which his car was moving.—*Birmingham Railway & Electric Co. v. Bowers*, 110 Ala. 328. But was it true that when the plaintiff begun to turn his horse and buggy for the purpose of crossing the tracks a distance of from twenty-five to thirty-five feet from the track upon which the collision was had, that the car moving at a rate of speed of from five to six miles an hour in the direction of the buggy, was only one hundred or one hundred and twenty-five feet away and nothing to prevent the motorman seeing it? If true, would the jury be authorized to find that the motorman *saw* the buggy when it was approaching the track for the purpose of crossing it? If he saw the horse and buggy approaching the track for the purpose of crossing it, knowing as he was bound to know, that its occupants could not *see* or hear the approaching car, on account of the top of the buggy being enclosed by curtains, in time to stop the car before the collision, his conduct amounted to that reckless indifference, or disregard of the natural and probable consequences of his acts to which may be imputed to him the same degree of culpability as wantonness and must be held the equivalent of willful injury. The facts of this case are clearly distinguished from the facts of the case last above cited. In that case, the deceased could see the approaching locomotive, and the engineer had a right to presume that he did see and hear it and to rely upon his getting off the track. Here if the evidence of the plaintiff's witnesses was to be believed, it was apparent to the motorman that plaintiff could not see or hear the car as it approached and that he was on account of being enclosed by the buggy top insensible of the danger. Under the circumstances he had no right to presume or rely upon the plaintiff hastening to cross the track or not attempting to cross it; the danger being known to him only and not

to plaintiff. Presumptions should not be indulged to relieve a party from the natural consequences of his act, against circumstances so strong as to lead the mind to the conclusion that the act was the result of wanton or reckless indifference to probable consequences.

The tendencies of the testimony in this case being in conflict as to whether the motorman saw and knew the plaintiff was going to cross the track, circumstanced as he was, in ample time to avoid the collision, the court properly submitted the evidence to the jury.

We have considered the only assignment of error insisted upon in the argument of appellant's counsel. It follows from what we have said, there was no error in refusing the written charges requested by the defendant.

The judgment is affirmed.