# Johnson *v.* Birmingham Railway L. & P. Co.

*Action for Damages for Death of Person on Track.*

(Decided Feb. 5th, 1907.    43 So. Rep. 33.)

1. *Negligence; Pleading; Complaint.*—A complaint which avers negligence in general terms, and then attempts to set out the particular acts constituting the negligence, without more, is demurrable, unless the acts so specified, in themselves. constitute negligence as a matter of law.

2. *Railroads; Persons on Track; Death; Complaint.*—A complaint which avers that the cars were negligently operated, in that, though the night was dark, they did not have a sufficient headlight and were run rapidly, which negligence proximately caused the intestate's injuries and death, does not contain allegations constituting negligence as a matter of law, and is demurrable.

3. *Pleading; Pleas; Objections; Waiver.*—Where an objection is not raised by demurrer that the pleaded acts of contributory negligence were alleged in the alternative, objection thereto is waived.

4. *Negligence; Discovered Peril; Contributory Negligence.*—Counts which allege negligence of defendant's servants after the dis-

.covery of the peril of the intestate, are counts in simple neg-ligence, and subject to pleas of contributory negligence.

5. *Same; Contributory Negligence; Knowledge of Peril.*—Contributory negligence when pleaded as a defense to a complaint which counts on' defendant's negligence after discovery of the peril, must show that the negligent act of the person injured, was committed by him with knowledge of his peril.

6. *Railroads; Persons on Track; Trespassers; Discovery of Peril; Evidence.*—The evidence in this case examined and held insufficient to justify a finding that decedent was crossing or walking down the track or laying thereon at the time of the accident, or that the motorman ·had actual knowledge of intestate's peril in time to have avoided the injury by the exercise of preventive effort.

7. *Same.*—A railroad company is not liable for the death of a person killed by a car while trespassing on the right of way at night, unless it is shown that the motorman had actual knowledge of his peril and could have avoided the same.

8. *Same; Pleading; Burden of Proof.*—The plea of the general issue or not guilty, as an answer to a complaint for killing intestate, a trespasser on the track, puts in issue all the material allegations of the complaint, including the allegation of the discovery of intestate's peril by defendant's motorman in time to have avoided the accident, by the employment of preventive effort and the failure to employ the same, and cast the burden on the plaintiff of proving such allegations.

9. *Appeal; Exclusion of Evidence; Prejudice.*—Where witnesses had ·testified to the locality and its surroundings, and as to the houses etc., there about the plaintiff was not prejudiced by being prevented from proving that there was a village there.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. A. COLEMAN.

Action by J. H. Johnson, as administrator of Charles F. Bridgeman, deceased, against the Birmingham Railway, Light & Power Company, to recover damages for defendant's alleged negligence in causing the death of plaintiff's intestate. From a judgment for defendant, plaintiff appeals. Affirmed.

The first count was for willful, wanton, or intentional negligence. The second and third counts were in simple negligence. The fourth count sufficiently appears from the opinion. It is deemed unnecessary to set out any of the counts of the complaint, as they are suffi-

ciently discussed in the opinion. After defendant's demurrers were overruled to these counts, defendant pleaded: (1) The general issue. (2) "For further plea and answer to the second and third counts of the complaint, severally and separately says that plaintiff's intestate was himself guilty of negligence which proximately contributed to his injuries and death, in this: Plaintiff's intestate negligently remained on said track, in dangerous proximity to the car or train then and there approaching, after the discovery by defendant's servants or agents in charge of the said car or train of the peril of plaintiff's intestate. (3) To the second and third counts of the complaint, separately and severally, defendant says that plaintiff's intestate was himself guilty of negligence which proximately contributed to his injuries and death, in this: plaintiff's intestate negligently went or negligently remained on said track without looking or listening for the train then and there approaching; or in this: plaintiff's intestate negligently went or negligently remained on said track when the said train which collided with him was in dangerous proximity to him, after having discovered that such train was in dangerous proximity; or in this: plaintiff's intestate negligently went or negligently remained on said track after having negligently failed to ascertain the approach of said train." Demurrers were interposed as follows: To the second plea: "Because one of the counts which said plea purports to answer charges defendant with wantonness or intentional wrong. (2) Contributory negligence is no answer to wanton or intentional wrong. (3) Said plea is confused as to what part of the complaint it purports to answer." And to the third plea: "Because the plea is uncertain and indefinite. It does not appear with sufficient certainty whether intestate negligently remained on said track." And to the second plea in so far as it purports to answer the second and third counts all the above grounds, and in addition thereto: "Because it appears from the second count that the negligence counted on was subsequent to the discovery of intestate's peril, and that same was the proximate cause of his injuries. Because said plea is no more than a denial of a material

part of said count. Because it does not appear that intestate had reasonable opportunity to extricate himself from said peril after same was discovered as aforesaid." All the above grounds of demurrer were separately filed to the third plea as an answer to the second and third counts of the complaint. The evidence is set out in the opinion of the court, as are the questions reserved on objection to evidence.

PINKNEY SCOTT, and BOWMAN, HARSH & BEDDOW, for appellant.—The 4th count of the complaint is not subject to demurrer.—*Glass v. M. C. R. R. Co.*, 94 Ala. 587; *H. A. & B. R. R. Co. v. Robbins*, 124 Ala. 117; *Birmingham Ry. & Elec. Co. v. City Stables*, 119 Ala. 621. The facts are stated from which defendant's duty to act sprang and it was only necessary to aver generally the negligent failure.—*Ensley Ry. Co. v. Chewning*, 93 Ala. 26; *M. & M. Ry. Co. v. Crenshaw*, 65 Ala. 567; *L. & N. R. R. Co. v. Marbury*, 125 Ala. 637; *Armstrong v. Montgomery St. Ry.*, 123 Ala. 224. The demurrer to the 2nd plea should have been sustained.—*L. & N. R. R. Co. v. Brown*, 121 Ala. 227. Plea 3 was bad and the demurrer should have been sustained.—*H. A. & B. R. R. Co. v. Dusenberry*, 94 Ala. 418; *Andrews v. Black*, 88 Ala. 294; *Hunter v. Rogers*, 50 Ala. 283; *C. of G. Ry. Co. v. Foshee*, 125 Ala. 218; *M. & C. R. R. Co. v. Martin*, 30 South. 830; *C. of G. Ry. Co. v. Lamb*, 124 Ala. 172. The court should have allowed proof as to whether the scene of the accident was a village.—§ 3443, Code 1896, and authorities there cited. This difference applies to cars operated by electricity.—*L. & N. R. R. Co. v. Anchors*, 114 Ala. 492. The jury is entitled to infer that the person charged with negligence or wrong was aware of the danger upon the various facts stated in this case.—*Southern Ry. Co. v. Bush*, 122 Ala. 486; *B. R. & E. Co. v. Smith*, 121 Ala. 355; *Robinson Mining Co. v. Tolliver*, 31 South. 519; *Southern Ry. Co. v. Shelton*, 136 Ala. 191; *C. of G. Ry. Co. v. Partridge*, 136 Ala. 587. Under the facts in this case the question of negligence was for the jury.—*Holmes v. B. S. R. R. Co.*, 140 Ala. 215; *Mouton v. L. & N. R. R. Co.*, 128 Ala. 539.

[Johnson v. Birmingham Railway L. & P. Co.]

TILLMAN, GRUBB, BRADLEY & MORROW, for appellee. —The court properly sustained the demurrers to the 4th count. It cannot be contended that the allegations therein constituted negligence as a matter of law.— *Sweet v. Bir. Ry., L. & P. Co.*, 39 South. 67. Failing to state a cause of action the sustaining of the demurrer to the count was error without injury.—*Bullock v. Coleman*, 136 Ala. 610. Counts 2 and 3 showed that plaintiff's intestate was a trespasser on plaintiff's track. —*Ensley v. Chewning*, 93 Ala. 26. Pleas 2 and 3 filed thereafter are sufficient.—*C. of G. Ry. Co. v. Foshee*, 125 Ala. 199. The court properly gave the affirmative charge. —*C. of G. Ry. Co. v. Foshee, supra; Southern Ry. Co. v. Shelton*, 136 Ala. 191; *Glass v. M. & C. R. R. Co.*, 94 Ala. 588; *Nave v. A. G. S. R. R. Co.*, 96 Ala. 267; *G. P. R. R. Co. v. Ross*, 100 Ala. 492; *Tenney v. C. of G. Ry. Co.*, 129 Ala. 523.

DOWDELL, J.—The fourth count of the complaint, to which a demurrer was sustained, after averring in general terms the negligent operation of the car or cars by defendant's servant, contained the following aver: ment: "And plaintiff avers that said car or cars were negligently operated in this: that it was a dark night, said car or cars did not have a sufficient headlight, and were being run rapidly, and said negligence proximately caused said intestate's said injuries and death, to the damage of plaintiff as foresaid." Where a complaint in general terms avers negligence, and then avers the particular act or acts constituting the alleged negligence without more, unless such act or acts in themselves amount to negligence, the complaint is demurrable. Neither of the acts averred in the fourth count, whether taken separately or together, can be said, as a matter of law, to constitute negligence, and there is no averment that they are done or performed in a negligent manner.

The second and third assignments of error relate to the action of the court in overruling plaintiff's demurrers to defendant's pleas numbered 2 and 3. In both and each of said pleas the defense of contributory negligence is attempted to be set up, and it sufficiently ap-

pears that each was addressed as an answer to the second and third counts of the complaint separately and severally. It is insisted in argument that the third plea is bad, in that the alleged acts of contributory negligence are averred in the alternative. If it should be conceded that the plea is in this respect faulty, the answer is that no such objection was raised by the demurrer.

While the second and third counts of the complaint count on negligence of the defendant's servant after discovery by him of the peril of plaintiff's intestate, they are none the less counts in simple negligence. One of the grounds of the demurrer to the second and third pleas, which set up contributory negligence, is to the effect that the negligence counted on in the second and third counts of the complaint was subsequent to the discovery of intestate's peril, and that same was the proximate cause of his injury. We do not understand the rule to be that an averment in a complaint that the negligence counted on arose after discovery by the defendant of the peril of the person injured will preclude the defendant from setting up the subsequent negligence of the party injured, which proximately contributed to the injury. The rule is otherwise. See *L. & N. R. R. Co. v. Brown*, 121 Ala. 221, 25 South. 609; *C. of Ga. Ry. Co. v. Foshea*, 125 Ala. 199, 27 South. 1006. It may be said to be a universal rule that, to a complaint in simple negligence, contributory negligence may be pleaded as a defense. When, however, contributory negligence is pleaded as a defense to a complaint, which counts primarily for the cause of action on subsequent negligence of the defendant—that is to say, on negligence occurring after discovery of peril—the plea, in order to be good, should show that the negligent act of the party injured, relied on as a defense, was done or committed by him with a knowledge of his peril. In this respect both of the defendant's pleas may be said to be faulty; but the plaintiff's demurrer failed to reach this objection, though possibly it was intended by the ninth ground of the demurrer to do so. The pleas of the defendant, when construed most strongly against the

pleader, did no more than set up a condition which caused the injury counted on in the complaint.

Upon the conclusion of the evidence in the case, the court, at the request of the defendant in writing, gave the general affirmative charge to find for the defendant. This action of the court is assigned as error, and we think it is the principal question in the case. It is to be borne in mind that the negligence counted on for a right of recovery was negligence of defendant's servant after discovery by him of the intestate's peril. The only evidence offered on the trial was that introduced by the plaintiff, and this evidence without dispute shows that at the time and the place of the alleged injury the defendant was under no duty to keep a lookout for the deceased. The injury occurred at a place where the tracks of the defendant were fenced in on both sides, and not at or near any public crossing, or within any city, town, or village, but in the open country. We think the evidence further clearly shows that the deceased was a trespasser upon the defendant's track; and this, without affording any fair or reasonable inference to the contrary to be drawn by the jury. There is no fact or circumstance in the evidence tending in the slightest degree to show that the deceased, at the time of the injury, was merely in the act of crossing defendant's tracks and for that reason not a trespasser. On the contrary, the undisputed evidence tends to show that the deceased was not in the act of crossing the defendant's tracks, which, of course, he would have the right to do without becoming a trespasser. The only evidence bearing upon this question was that of plaintiff's witness Tom Stone, which was as follows: "On the 10th day of April, 1904, I lived at Wilkes Station on the North Bessemer car line. I came home on the Bessemer car on that car line that night. Several were on the car. I do not know Charles F. Bridgman, but saw him there that night. He got off at Wilkes, the same station I did, about half past 12 o'clock at night. He had ridden from Bessemer, and his destination was Brighton, which is Woodward Crossing. I considered him drunk. He passed his destination and rode on to Wilkes Station. The conductor put his hand on his arm, shook

him, I think, and he was asleep just before he got there, and asked him where he wanted to get off. That was just before we got to Wilkes Station. After he was put off there at Wilkes Station, he stood around there a little bit, talking and jowering until the next car came, and still did not get on it. That car was going towards Bessemer. He stayed around a few minutes, and went on back down the car line towards Brighton, down that way. The next station he would come to first would be McDonald Station, and the next station Madison. I do not know how far he went down; only where they say he was killed at. I never saw him. I saw where they said he was killed, which was just before you got to the trestle down below the switch between McDonald and Madison, which is between Wilkes and Madison; that is, it was south of Wilkes Station. The next car coming up from Bessemer at 1 o'clock, that was the car that killed him, I suppose. The car went down while we were at Wilkes Station. There was no other car to come by, except that car that went down. That was the last car that night." On cross-examination this witness testified: "The car on which I came up with this man came from Bessemer. I got off at the same station he did, Wilkes Station. There was nobody but me and him, until the other came, and he was drunk. Another car came and went by Wilkes Station. It stopped, and two men got off. He did not get on, and that train went on to Bessemer. The train he got off came on to Birmingham. That was the last trip. It did not go out any more that night. The train that went to Bessemer made one more trip that night, coming back to Birmingham. I saw him starting on down the track. That was the last I saw of him. He was staggering. This was after midnight; after 12:30 o'clock. Where they say his body was found was between a quarter and a half a mile; somewhere near a half mile, I guess. I do not know how far Wilkes is from Bessemer; but I think they call it four miles." This evidence does not afford any fair or reasonable inference that the deceased, at the time of the injury, was merely in the act of crossing the defendant's track. The only testimony bearing on the question of the discovery of the deceased's peril by the

defendant's servant was that of plaintiff's witness W. M. Zinn, which was substantially as follows: That he was the only passenger on the car that ran over and killed plaintiff's intestate; that at a point between Bessemer and Birmingham witness was suddenly pitched forward in his seat by the sudden stopping of the car, and immediately thereafter felt the force of the collision of the car with some object on the track. He testified that the car was going at about the usual rate of speed, from 10 to 15 miles an hour, and immediately after the car stopped he alighted, and found the intestate near the rear end of the second car of the train, dead. This witness further testified that "he couldn't say that he had seen the motorman at any particular time prior to the accident; that he had no recollection of looking at him just before the accident happened; that he could not say that the motorman was looking forward down the track or to the side, just prior to and at the time of the accident; that he had no distinct recollection on the subject, and that all that he could say was that, whenever he did see the motorman, he was at his post on the front of the car and with his back towards the witness; and that he did look to see what was the matter when the accident happened, and at the time the motorman was at his post." There was evidence that the track at the place of the accident was straight, and that the car was provided with an arc light, which the evidence tended to show would enable one to see or discover a man standing or walking upon the track at a distance of more than 100 yards. The evidence tended further to show that a train like the one in question at the place of the accident, moving at the rate of speed at which it was going, might be stopped within a distance of 120 to 160 feet. The evidence of the plaintiff's witness, Clotfelter, who was examined as an expert, was to the effect that a man lying down on the track would not be discovered under the conditions that existed at a greater distance than 20 or 30 feet in front of the car; that such an object would not be distinguishable from ballast on the track.

On this evidence, we think it would be the merest guesswork or conjecture to say that the deceased was,

at the time of the accident, crossing the track, or walking down the track, or lying upon the track, or that the motorman had actual knowledge of the peril of the deceased in time to have avoided the injury by the exercise of preventive effort. There must be actual knowledge of the peril; otherwise, there can be nothing upon which to predicate subsequent negligence. The principle is the same in cases where simple negligence after discovery of peril is relied on, as in cases of wantonness or intentional wrong.—*Glass v. M. & C. R. R. Co.*, 94 Ala. 588, 10 South. 215; *Nave v. A. G. S. R. R. Co.*, 96 Ala. 267, 11 South. 391. Of course, this actual knowledge may be inferred from the existence of other facts, shown in the evidence; but the existence of such facts should not rest purely in conjecture or speculation. The evidence in this case, we think, differentiates it from those cases relied on by the appellant, viz.: *Sou. Ry. Co. v. Bush*, 122 Ala. 486, 26 South. 168; *B. R. & E. Co. v. Smith*, 121 Ala. 355, 25 South. 768; *Robinson Mining Co. v. Tolbert*, (Ala.) 31 South. 519; *Sou. Ry. Co. v. Shelton*, 136 Ala. 191, 34 South. 194; *Central of Ga. Ry. Co. v. Partridge*, 136 Ala. 587, 34 South. 927—and brings the case more nearly within the influence of the cases of *Nave v. A. G. S. R. R. Co.*, 96 Ala. 267, 11 South. 391, and *Ga. Pac. Ry. Co. v. Ross*, 100 Ala. 492, 14 South. 282, which cases are more analogous in point of fact than the case at bar. The plea of "not guilty" put in issue all the material allegations of the complaint, and hence the allegation of the discovery of the intestate's peril by the defendant's motorman within time to have avoided the accident by the employment of preventive means, and the failure to employ such means, all of which was necessary to be shown to sustain the charge of subsequent negligence, and the burden of showing this was on the plaintiff. Apart from any consideration of the pleas of contributory negligence, we are clearly of the opinion that on the whole evidence, under the plea of "not guilty," the court was justified in giving the general affirmative charge requested by the defendant.

No reversible error was committed in sustaining the defendant's objection to the question asked the witness Ansley: "Was that a village along there, Mr. Ansley?"

[Birmingham Ry. L. & P. Co. v. Randle.]

It appears from the record that this witness testified to the locality, the surrounding condition as to the houses, etc., affording full opportunity to the jury to determine, as well as the witness could, as to whether there was a village along there. Other witnesses also testified to the locality and its surroundings. So, if there was any error in sustaining the objection to the question, it was error without injury.

Finding no error in the ruling of the court, the judgment appealed from will be affirmed.

Affirmed.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.