# Herring v. Louisville & Nashville R. R. Co.

### Injury on Track.

(Decided December 16, 1915. 70 South. 749.)

1. **Charge of Court; Conformity to Pleading.**—Where the complaint contained two counts only, one for subsequent negligence and the other for willful injury, an instruction asserting that plaintiff cannot recover if the defendant be found not guilty of negligence as charged in any one of the counts is not erroneous nor misleading, as the complaint contains but one count counting upon negligence.

2. **Railroads; Trespassers; Degree of Care.**—Where plaintiff was injured while trespassing on the railroad track by a passing train having two engineers and two firemen, and his complaint charged subsequent negligence in one count, a charge limiting defendant's liability to the negligence of the engineer in charge of the train was erroneous as the negligence of either the engineer or fireman might have warranted recovery.

3. Same.—Under such circumstances it was the duty of the servants of defendant, after they discovered the perilous position of plaintiff, not only to avoid carelessly injuring him, but to use all reasonable means to avoid injuring him, such as sounding a warning, applying the brakes, etc.

(Mayfield and Sayre, JJ., dissent.)

APPEAL from Morgan Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by Bennie Herring against the Louisville & Nashville Railroad Company for injuries received while on the track. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The facts sufficiently appear from the opinion. The following are the charges referred to in the opinion: K. "I charge you that, if any one of your number is reasonably satisfied from the evidence that defendant was not guilty of negligence as charged in any one of the counts of the complaint, you cannot find a verdict for plaintiff."

Charges E and B appear.

J. "Unless the jury believe from the evidence that defendant's engineer could have avoided striking said plaintiff, their verdict should be for defendant."

H. "If you are not reasonably satisfied from the evidence that defendant's engineer, after discovering plaintiff upon the track, if you believe from the evidence that said engineer did discover him upon the track, had not time to stop said train before striking him, then your verdict should be for the defendant."

W. A. DENSON, for appellant. EYSTER & EYSTER, for appellee.

MAYFIELD, J.—Plaintiff, while a trespasser on defendant's track, was injured by a passing train; and he seeks to recover damages for the injuries received. The complaint contained two counts—the first declaring specifically on subsequent negligence, the second, on wanton or willful injury. The court gave the affirmative charge for the defendant as to the second count, and the jury found for the defendant as to the first count; and plaintiff prosecutes this appeal. Appellant assigns many errors as to the refusal of charges requested by the plaintiff, and as to the giving of various charges requested by defendant.

The court properly directed the verdict as to the second count. There is certainly no evidence in this record tending to

establish wanton or intentional injury, as alleged. The plaintiff being concededly a trespasser on the defendant's track, from the time he went upon it up to the very instant of his injury, and never having attempted to avoid the injury by either stopping, looking, or listening, for trains, but running heedlessly down the track on the ends of the crossties until he was injured, cannot recover, in the absence of wanton or willful wrong. The plaintiff's negligence in this case, under his own evidence, continued up to the very instant of his injury, and of necessity, and as a matter of fact and of law, both theoretically and practically, it must have been either subsequent to or concurrent with any simple negligence of the defendant. There was no instant when plaintiff's negligence ceased, and he exercised due care, after which any possible negligence of the defendant could have produced the injury. If he had seen or heard the train, and had attempted to escape the danger, but for some reason could not do so, and the defendant, while or after plaintiff was using due and proper care to avoid injury, was guilty of simple negligence which proximately contributed to the injury complained of, then the plaintiff could recover as for subsequent negligence; but no such case is presented here.

In *McWhorter's Case*, 156 Ala. 279, 47 South. 84, the person injured was not a trespasser; he was a flagman, and had a right to be on the tracks for the purpose of flagging the trains, but while on the track he went to sleep, or the evidence tended to show this fact, and the court in that case said: "There was evidence from which the jury could infer that the intestate had fallen asleep, and was not, therefore, conscious of the impending danger, and that a loud blast or blasts of the whistle might have aroused him, and warned him of the approach of the train in time to escape, and which would have required but a slight degree of time and space."

The facts in this case are different: Here there never was a moment, from the time the boy went upon the track until he was struck, when he was not conscious of his danger; each step upon the track was made with the conscious knowledge that he was a trespasser, and therefore a tort-feasor, and liable to be hit by passing trains. His negligence was not less, but greater, at the moment he was hit, than it was when he went upon the track. His negligence consisted, not in his mere going upon the

[Herring v. Louisville & Nashville R. R. Co.]

track—he had a right to do that, if it was for the purpose of crossing—but in traveling along the track, because in that event he knew it was only a question of time before he would be overtaken by a train, and knew that this time was growing shorter each instant he remained on the track. It was as much, or more, his duty to look and listen for approaching trains the instant he was struck as it was the instant he went upon the track. Surely it cannot be said that if a man goes upon a railroad track, and walks or runs upon it, without looking or listening for trains, until he is overtaken or met by a train, and injured, he is guilty of but one act of negligence, and that is going on the track and then and there failing to stop, look, and listen for approaching trains. If the contrary were true, then it would follow that if he is not injured at the instant he goes upon the track, but is subsequently injured by simple negligence after his peril is discovered, his negligence is no defense; that is to say, if he should remain on the track for a moment, and his peril be discovered by the engineer, who tries to stop the train, instead of sounding the alarm, or does vice versa, when a skilled engineer would have done the other, the railroad company would be liable, unless the continuing wrongdoer actually sees or hears the train, and thus actually becomes conscious of his imminent peril from that particular train. This will not do, because, if he actually knows of the immediate approach of the particular train, and, taking no heed thereof, consciously thereafter remains on the track until he is hit, this would be a wrongful act, but not a negligent act. His wrong in remaining on the track under such conditions would be voluntary and willful, and if he is killed it would clearly be a case of suicide. His act or wrong after becoming conscious of the immediate approach of the train and the impending danger, in order to be negligent, would be to do the wrong thing, or to be guilty of some negligence by remaining on the track with no effort to escape.

The Alabama cases on this subject, as well as most of the · English and American cases up to 1901, are cited and reviewed in one extensive note to the New Hampshire case of *Boston & Maine Railroad,* reported in 55 L. R. A. 428 to 465. In this note the cases are classified, and apparent conflicts avoided. Cases of injuries to continuous trespassers on the tracks of railroads, and who are therefore all the while conscious of the immediate

[Herring v. Louisville & Nashville R. R. Co.]

and impending dangers, until injury is inflicted, are distinguishable from those cases where employees or passengers are injured, but who are guilty of some antecedent negligence, but which is intercepted by a loss of consciousness, as going to sleep, or attempting to avoid the danger or peril, which is prevented by some subsequent act of negligence on the part of the defendant. Cases like the one in question are also distinguishable from those cases in which the plaintiff sees or hears the approaching train, and willfully or consciously fails to avoid the certain and impending collision—cases in which, if death should result, it would be nothing less than suicide. Where the plaintiff's negligence continues up to the very instant of the injury, and is contributory to his injury, then, of course, he cannot recover, in the absence of wanton or willful injury on the part of defendant. The plaintiff's negligence, however, does not contribute to his own injury if, after first placing himself in peril, he thereafter employs proper diligence to extricate himself from the peril, and the defendant thereafter neglects to use proper diligence which would probably prevent the injury. The law on this subject was well expressed by this court in *Tanner's Case*, 60 Ala. 638, 641: "If those in charge of a train, even in the rightful exercise of their skill and diligence, find a person dangerously exposed, although such exposure was brought about by the negligence of such person, the duty of diligence resting on the officers of the train is not in the least diminished on that account. In such case, although they will stand acquitted of all blame in this first stage of the peril, yet when the peril has become reasonably manifest, so as to create the presumption that it was comprehended, each party must again be diligent to prevent the catastrophe. If the person endangered be negligent at this crisis, and suffer injury, which proper care and diligence could have averted, the law affords him no redress. On the other hand, *if employing proper care and diligence to escape the danger,* to which his own previous negligence had contributed proximately to expose him, those in control of the train fail to apply proper skill and diligence to avoid the injury, when such skill and diligence, if properly resorted to, might have prevented it, this is wanton or reckless negligence, for which the railroad will be held accountable. In such case the negligence of the person injured, which first placed him in jeopardy, becomes remote-

ly contributory to the actual injury sustained, and is no bar to the suit. * * * We hold, then, that the defense of contributory negligence is not made good if the plaintiff, after contributing by his own negligence to place himself in peril, employs proper diligence to extricate himself, and the defendant neglects to use diligence, which might have prevented the catastrophe."

In *Tanner's Case,* plaintiff's testator was riding along the railroad track, and in trying to escape was thrown from his horse. In *Black's Case,* the intestate was deaf, and was walking along the track, when he was overtaken by a train, as was the plaintiff in the case at bar—the only difference in these two cases being that the plaintiff in this case was not deaf, and that he was running along the track, upon the ends of the cross-ties, until stricken. He certainly had "the last clear chance" to prevent the accident. One second before the train hit him he could have jumped to safety, according to his own testimony.

In *Black's Case,* 89 Ala. 313 et seq., 8 South. 246, certain principles of law were announced, which have been repeatedly followed and never expressly departed from, which control this case and prevent a recovery on any phase of the evidence. The facts in that case, as before stated, were similar to the facts in this case, and it was there said: "A person on a railroad track, either crossing it, standing on it, or walking on it, must employ eyes and ears, that he may be informed whether there is an approaching train; and if he fail to do so he is guilty of negligence.—*S. & N. R. R. Co. v. Thompson,* 62 Ala. 494; *Gothard v. Ala. G. So. R. R. Co.,* 67 Ala. 114; *Frazer v. S. & N. R. R. Co.,* 81 Ala. 185 [1 South. 85, 60 Am. Rep. 145]; *L. & N. R. R. Co. v. Crawford* [89 Ala. 240, 8 South. 243]. Employees running on an engine or train on a railroad track, when they discover a person on the track who from appearance is an adult, or of discreet years, are justified in supposing such person will see or hear the approaching engine or train, and get off the track; and hence, in such conditions, there is no duty to stop or check the train, in the absence of other attendant circumstances.—*Tanner v. L. & N. R. R. Co.,* 60 Ala. 621; *Frazer v. S. & N. R. R. Co.,* 81 Ala. 185 [1 South. 85, 60 Am. Rep. 145]. The railroad employees may act on the presumption until circumstances—actual circumstances, brought to their knowledge—make it apparent that the trespasser is not aware of the approach of the train,

or is unable to extricate himself from the peril.—*M. & M. R. R. Co. v. Blakely*, 59 Ala. 471; *Frazer v. S. & N. R. R. Co.*, 81 Ala. 185 [1 South. 85, 60 Am. Rep. 145]. * * * If, however, the railroad employees, after making such discovery, could, by the appliances at their command, have stopped the train and saved his life, and if they did not in good faith attempt to do so, their failure to act, when it would probably have been successful, would be negligence so reckless and wanton in degree as to become the legal equivalent of intentional wrong, and would entitle plaintiff to a verdict, notwithstanding his intestate's prior negligence.—*L. & N. R. R. Co. v. Crawford* [89 Ala. 240, 8 South. 243]. Such case would present the secondary stage of peril, mentioned in *Tanner's Case*, 60 Ala. 621. * * * If after decedent's ignorance of his peril was brought to their knowledge— actual knowledge, for they owed the intestate no duty to find it out—they failed to apply all the instrumentalities at their command to stop the train and save him, then, and only in that event, is plaintiff entitled to a verdict. His deafness does not become a factor in the inquiry until defendant's employees become aware of it.—*Frazer's Case*, 81 Ala. 185 [1 South. 85, 60 Am. Rep. 145]. If that state of wanton negligence on the part of the defendant's employees has been shown to the satisfaction of the jury, plaintiff is entitled to a verdict. If it has not been so shown, the finding should be for the defendant."

This case has been cited often, and never overruled nor expressly qualified. In *Gullatt's Case*, a case no stronger for the plaintiff than this, it was held that the general affirmative charge should have been given, and it was said: "The intestate was a trespasser on the defendant's track at the time he was killed, whether standing, walking, or lying down, and was at a point on the line where the defendant owed him no duty to keep a lookout, but owed him only the duty of using all reasonable efforts to prevent the injury after discovering his peril on the track, and after becoming aware that he could not or would not extricate himself therefrom.—*Southern Ry. Co. v. Bush*, 122 Ala. 470, 26 South. 168; *Black's Case*, 89 Ala. 313, 8 South. 246; *Moorer's Case*, 116 Ala. 642, 22 South. 900." *So. Ry. Co. v. Gullatt*, 150 Ala. 318, 320, 43 South. 577.

We have here, however, another line of cases, holding that pleas of contributory negligence to counts declaring on subse-

quent negligence, even as to trespassers, in order to be good, must show that the contributory negligence relied on in such plea was with a knowledge of the then present and impending peril. *Southern Ry. Company v. Stewart,* 153 Ala. 137, 45 South. 51, cites the cases up to that time, and says: "While contributory negligence on the part of the person injured is pleadable as a defense to such complaint, yet, in order to make a good plea, it must be shown that the contributory negligence relied on was the negligent act or omission of the injured party with a knowledge of the then present and impending peril.—*Johnson v. Birmingham R. L. & P. Co.,* 149 Ala. 529, 43 South. 33; *Duncan v. St. L., etc., Ry. Co.,* 152 Ala. 118, 44 South. 418; *L. & N. R. R. Co. v. Brown,* 121 Ala. 221, 25 South. 609."

These cases were followed in the case of *Ala: Gt. So. R. R. Co. v. Smith,* 178 Ala. 613, 59 South. 464; and were distinguished from *Brown's Case,* 171 Ala. 310, 55 South. 107.

In *Johnson's Case,* 149 Ala. 529, 43 South. 33, cited above, the court, after holding the pleas bad, nevertheless held that the affirmative charge should have been given for the defendant; it being a case where the intestate was killed while walking along the railroad track, notwithstanding there was some evidence tending to show that the motorman was looking forward, and that he could have seen the intestate before striking him with the car—distinguishing that case from *Bush's Case,* 122 Ala. 486, 26 South. 168, and others, holding that it was a jury question whether the defendant was guilty of subsequent negligence. The court, per Dowdell, J., had this to say: "There must be actual knowledge of the perils, otherwise, there can be nothing upon which to predicate subsequent negligence. The principle is the same in cases where simple negligence after discovery of peril is relied on, as in cases of wantonness or intentional wrong.—*Glass v. M. & C. R. R. Co.,* 94 Ala. 588, 10 South. 215; *Nave v. A. G. S. R. R. Co.,* 96 Ala. 267, 11 South. 391. Of course, this actual knowledge may be inferred from the existence of other facts, shown in the evidence; but the existence of such facts should not rest purely in conjecture or speculation. The evidence in this case, we think, differentiates it from those cases relied on by the appellant, viz.: *So. Ry. Co. v. Bush,* 122 Ala. 486, 26 South. 168; *B. R. & E. Co. v. Smith,* 121 Ala. 355, 25 South. 768; *Robinson Mining Co. v. Tolbert,* 132 Ala. 462, 31 South. 519; *So.*

*Ry. Co. v. Shelton,* 136 Ala. 191, 34 South. 194; *Central of Georgia Ry. Co. v. Partridge,* 136 Ala. 587, 34 South. 927—and brings the case more nearly within the influence of the cases of *Nave v. A. G. S. R. R. Co.,* 96 Ala. 267, 11 South. 391, and *Ga. Pac. Ry. Co. v. Ross,* 100 Ala. 492, 14 South. 282, which cases are more analogous in point of fact than the case at bar."

It therefore appears that in every case where the question has been squarely raised by the affirmative charge, touching one who was walking down or along the track where he had no right to be, and was therefore a continuing trespasser, and conscious of his peril, the negligence of the defendant, to justify a recovery, must be the same in principle and effect as in cases of wantonness or intentional wrong. See *Nave's Case,* 96 Ala. 267, 11 South. 391; *Glass' Case,* 94 Ala. 588, 10 South. 215; *Ross' Case,* 100 Ala. 492, 14 South. 282; *Johnson's Case,* 149 Ala. 538, 43 South. 33—all following *Black's Case,* 89 Ala. 313, 8 South. 246.

In *Tucker's Case,* 166 Ala. 564, 51 South. 949, the intestate was an intended passenger, having purchased a ticket as a passenger at a flag station, and, in accordance with the custom at this station, had gone across the track to flag the approaching train on which he was to be carried. After flagging the train, his signal wave having been answered, he started to run back across the track to the depot, in order to board the train, and was stricken by the approaching train while so running, and killed. A majority of this court—in fact, all the members except the writer—held that there was no question to be submitted to the jury, that there was no evidence of wantonness, and that it was shown that intestate, who was a boy in his teens was guilty of negligence which proximately contributed to his injury. Surely a trespasser, running along a track until injured, does not present a stronger case than that of an intending passenger, running diagonally across the track at a depot at a public road crossing and so receiving injury. Surely there was more evidence in that case to show that the engineer saw the boy in time to prevent the injury than there is in this.

In *Nave's Case,* 96 Ala. 264, 267, 11 South. 391, 392, deceased was a flagman 15 years of age, and he was killed by a passing train while he was standing or sitting on the cross-ties. In that case the court said, of the facts and the law: "They show that deceased was in a position to command a full view of the train

[Herring v. Louisville & Nashville R. R. Co.]

for more than a half mile; that he was of that age when the law holds him to the exercise of reasonable discretion and prudence for his own preservation, and if he either stood or sat upon the track, under such circumstances, until he was run over by the train and killed, he was guilty of such gross contributory negligence as to defeat plaintiff in his suit, unless the defendant was guilty of intentional injury, or such carelessness as to amount to wantonness or an intention to inflict injury. There is no evidence in the record from which it can be inferred that the employees in charge of the train knew of deceased's perilous position in time to avoid the injury by any possible diligence, unless such knowledge be inferred from the fact that it was daylight, the road straight, the view unobstructed, and from the duty to keep a lookout for obstructions."

This case has been many times followed.

In *Ross' Case*, 100 Ala. 490, 14 South. 282, the plaintiff was a trespasser walking upon defendant's trestle, and he was knocked off by a passing train. The court said of the facts and of the law applicable: "To entitle such a plaintiff to recover, notwithstanding his own contributory negligence, it must be made to appear that the defendant's employees, after discovering his peril, failed to exercise due care and diligence, to avert the injury, constituting wanton, rackless, or intentional negligence on their part. The only facts in evidence from which it could be inferred that the employees of the company knew of plaintiff's peril were that the accident happened in the daytime; that the road at that point was nearly straight, and the view unobstructed for about 150 yards above the trestle; that the engine, as the proof tended to show might have been stopped within from 80 to 150 feet; and that the fireman on the engine was seen by a witness, at the time, to be looking out of the window of the engine, down the track towards plaintiff."

The decisions on this subject are reviewed in the opinion, and in a note thereto, in the case of *Southern Railway Company v. Bailey*, 27 L. R. A. (N. S.) 379. In the note it is said: "The decision in this case, denying the applicability of the doctrine of last clear chance, apparently rests upon the ground that the negligence of plaintiff continued until the very instant of the impact, and was therefore contemporaneous and concurrent with the negligence of the defendant, if on the facts the defendant

was chargeable with negligence at all. This view is in accord with the position taken in the note in 7 L. R. A. (N. S.) 132, referred to in the opinion, and numerous other notes in this series (see references in the note to *Smith v. Connecticut R. & Lighting Co.*, 17 L. R. A. [N. S.] 707, and also notes or comments in 19 L. R. A. [N. S.] 446; 19 L. R. A. [N. S.] 453; 22 L. R. A. [N. S.] 200; 26 L. R. A. [N. S.] 309; and is also sustained by the recent case of *Bourrett v. Chicago & N. W. R. Co.* (Iowa) 121 N. W. 380.''

We quote the following from the opinion in the above case, which certainly states the law correctly: "In 7 L. R. A. (N. S.) 132, there is an instructive note upon the case of *Dyerson v. Union P. R. Co.* In that case it was held that a plaintiff who has received an injury occasioned by the negligence of the defendant, but who could have avoided it by the exercise of ordinary care on his own part, cannot recover damages therefor, although the defendant ought to have discovered (but did not, in fact, discover) his peril in time to have prevented the accident, where the plaintiff's negligence continued up to the very moment he was hurt, and where the exercise of reasonable diligence before that time would have warned him of his danger, and enabled him to escape by his own effort. As is said in the note: 'The point upon which the decision in the * * * [principal] case turns * * * [is] that the negligence of the plaintiff continued up to the very moment he was hurt, and was therefore contemporaneous and concurrent with the negligence of defendant.' The author of the note referred to shows that courts, in applying the doctrine of the last clear chance, have sometimes supported a recovery, although, upon the facts the plaintiff or the deceased, and not the defendant, would seem, but for his own negligence, to have had the last clear opportunity to avoid the injury. The duty on the part of the defendant's employees to keep a lookout is conceded, but it is shown that there is a corresponding duty upon the part of the deceased to keep a lookout for trains, and, if his breach of duty in that respect continues up to the moment of the injury, he cannot recover, for such a case is not one of prior negligence on the part of the deceased, and subsequent negligence on the part of the defendant, but of concurring negligence on the part of both up to the very instant of the accident. We leave out of view, of course, cases where

the plaintiff is apparently not in the possession of his faculties, as in the case of *Seaboard & R. R. Co. v. Joyner*, 92 Va. 354, 23 S. E. 773; or where, as sometimes happens, the injured person is caught upon a trestle or a bridge, or is otherwise placed in a helpless condition, and those in control of the train had actual knowledge of his condition, or by the exercise of reasonable care should have known of his peril. We concede the liability of the defendant, also, where the circumstances show that, if the defendant had exercised reasonable care to discover the plaintiff's peril, it could have averted the accident, when it was too late for the plaintiff by the performance of his duty, to have extricated himself.

"This principle is thus stated in *French v. Grand Trunk R. Co.*, 76 Vt. 441, 58 Atl. 722: 'It is true that when a traveler has reached a point where he cannot help himself, cannot extricate himself, and vigilance on his part will not avert the injury, his negligence in reaching that position becomes the condition, and not the proximate cause, of the injury, and will not preclude a recovery; but it is equally true that, if a traveler when he reaches the point of collision is in a situation to help himself and, by a vigilant use of his eyes, ears, and physical strength to extricate himself and avoid injury, his negligence at that point will prevent a recovery, notwithstanding the fact that the trainmen could have stopped the train in season to have avoided injuring him. In such a case the negligence of the plaintiff is concurrent with the negligence of the defendant, and the negligence of each is operative at the time of the accident. When negligence is concurrent and operative at the time of the collision, and contributes to it, there can be no recovery.' "—Pages 382, 383 of 121 N. W.

Mr. Elliott, we think, states the rule correctly, as follows: "The general rule is that the owner or occupier of premises owes no duty to a trespasser thereon, except to do him no willful or wanton injury. A trespasser is a wrongdoer, and it is a general principle of jurisprudence that the courts will not aid a wrongdoer. The fact that the trespasser is a wrongdoer does not, however, justify malicious, wanton, or willful maltreatment of him, and the failure to use reasonable care to avoid injury to him after the discovery of his danger may sometimes be sufficient evidence of willfulness or wantonness."—Railroads, vol. 3, § 1253.

28—195

"There is, as we have seen, some conflict among the authorities as to the duty due a trespasser, and this makes it difficult to determine the liability of the company in such cases. But when the question of the duty of the company to a trespasser is settled the question as to its liability to him is comparatively free from difficulty. If the company willfully injures him it will be liable even though he may be guilty of contributory negligence. So, in some jurisdictions, the term 'gross negligence' is still used, and it is held that the company is liable where the conduct of its servants, resulting in injury to the trespasser, is grossly negligent, or so reckless as to evince an entire disregard of consequences or a willingness to inflict the injury to him after discovering his danger and apparent inability to take care of himself, if such care would have prevented the injury. Several of the courts even go so far as to hold the company liable in such a case where it fails to use reasonable care to discover the trespasser in time; but this we regard as contrary to principle. On the other hand, it has been held in many cases that one who trespasses upon a railroad track or other dangerous place upon the company's premises is guilty of contributory negligence, and this is certainly true unless he uses care proportioned to the danger, or, in other words, such reasonable care as the circumstances demand. If he does not do so, the company is not liable unless it willfully or wantonly injures him, or at least fails to use due care after discovering his danger and inability to escape."—Id. § 1254.

"As a general rule the company's employees may presume that one apparently able to do so will get off the track in time. But where a very young child is seen upon the track they cannot safely act upon the presumption that it will get off the track or exercise the care of an adult. So, even in the case of an adult, the circumstances may be such that no such presumption can be indulged. And, as we have elsewhere said, the company is liable where it willfully injures a trespasser, or fails to exercise reasonable care after discovering, or, according to some of the authorities, after it ought to have discovered, his danger and inability to escape, if the exercise of such care would have prevented the injury. Although there is a clear distinction between negligence and willfulness, yet a reckless and wanton disregard of consequences, evincing a willingness to inflict injury, may

[Herring v. Louisville & Nashville R. R. Co.]

amount to willfulness, although there is no direct proof of actual intention to inflict the injury complained of. Thus, where a trespasser was seen by the engineer upon a long trestle in time to have stopped the train, and the latter did nothing to stop or slacken the speed of the train, but went on, speculating on the chances of the trespasser's reaching the end of the trestle before the train, although it must have been apparent that the trespasser could not escape, it was held that the engineer was guilty of such recklessness as amounted to willfulness, and that the company was liable for running over and killing such trespasser while upon the trestle, regardless of his contributory negligence."—Id. § 1257a.

All of the well-considered cases and the best text-books hold that in a case like the one at bar the plaintiff's contributory negligence will prevent a recovery, unless the agents or servants in charge of the train are guilty of wantonness or willful injury; this, for the reason that the plaintiff, both in theory and in practice, both as a question of fact and as a question of law, is necessarily guilty of contributory negligence in failing to look and listen for the coming train at the very moment he is stricken by the train. If in this case plaintiff had looked or listened one, two, or three seconds before the train hit him, he would have discovered it and have escaped injury. His negligence in failing to look or listen for approaching trains of necessity was concurrent with any possible negligence on the part of the defendant, and therefore defeats a recovery, in the absence of wantonness or willful injury. If his negligence had ceased, by his subsequently using due care to avoid injury, or if, while trespassing, he had lost consciousness and was no longer responsible, or he was otherwise incapable of contributory negligence, the rule would be different; but no such facts are presented by this record.

Justice Sayre and the writer are of the opinion that the affirmative charge should have been given for the defendant, as requested, and that no possible injury could have been done the plaintiff by any of the adverse rulings complained of. The majority, however, are of the opinion that the affirmative charge should not have been given as requested by the defendant, and that the errors assigned and insisted upon should be treated. The majority do not desire to be bound by all that is said in the

opinion of the writer, and do not agree to the conclusions reached by him. All the members of the court concur in the remainder of the opinion treating the assignment of errors; but Justice SAYRE and the writer do not agree to the result that the judgment should be reversed and the cause remanded.

(1) There was no error in giving charge lettered K. There was but one count in the complaint charging negligence; hence the charge was not error, and could not mislead. The case is different from those cases in which the complaint contained several negligence counts.

(2, 3) It was error to give charges E and B, which were as follows: "E. If you believe from the evidence that the injury to plaintiff did not result from the negligence of the engineer of the defendant's engine, in charge of the train that injured him, then your verdict should be for the defendant."

"B. I charge you that the only duty owing to plaintiff by defendant's servants was not to carelessly injure him, after discovering his perilous position on the track, if you believe the servants discovered his alleged perilous position."

These charges were not correct as applied to the pleadings and the evidence in this case. Charge E made the right to recover dependent solely upon the negligence of one engineer, whereas the negligence of either of the two engineers or of either of the two firemen might authorize the recovery. Charge B restricts the duty of defendant's agents or servants to too narrow a compass. The word "carelessly," as used in the charge, is not the equivalent of, or synonymous with, "negligently;" besides they owed him the duty, after discovering his peril, if they did so discover it, to use all reasonable means to avoid injuring him, such as blowing the whistle, ringing the bell, applying the brakes, etc. The charge, therefore, restricts their duty to too narrow a field.

It was also error to give charge J, requested by the defendant. This charge limits the right to recover to the negligence of one engineer, whereas the negligence of either two engineers, or of either of two firemen, under the issues and the proof, might have authorized a recovery.

Charge H was also bad, and should not have been given. This charge ignores the duty to warn plaintiff. If plaintiff had been warned he might have escaped.

[Mobile Temperance Hall Assn. v. Holmes, et al.]

If there be other errors, it is not necessary to treat them here, as they may not arise on another trial, and many of the charges are not so identified or insisted upon in argument as to require treatment on this appeal.

. The majority of the court are of the opinion that the errors pointed out require a reversal of the judgment appealed from. Justice SAYRE and the writer, however, are of the opinion that the affirmative charge requested by the defendant should have been given as to each count, and that the errors pointed out were without possible injury to plaintiff.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, GARDNER, and THOMAS, JJ., concur. MAYFIELD and SAYRE, JJ., dissent.